OPINION
{¶ 1} Appellants, Neomi N. Colburn ("Mrs. Colburn") and Francis F. Colburn ("Mr. Colburn"), appeal the October 24, 2002 judgment entry of the Trumbull County Court of Common Pleas, in which the trial court granted summary judgment in favor of appellees, Baier Realty 
Auctioneers and Richard J. and Paul E. Baier ("the Baiers").
 {¶ 2} On January 15, 2002, appellants filed a complaint against appellees alleging fraud, negligence, breach of fiduciary duty, and violations of the Consumer Sales Practice Act ("CSPA"). Appellants contended that appellees represented that the sale of their property via auction would realize a "fair price" of between $125,000 and $135,000. As a result of that representation, appellants agreed to list their property with appellees. Appellees filed an answer to the complaint on February 13, 2002. Appellees filed a motion for summary judgment on July 2, 2002. Appellants submitted a memorandum in opposition to the motion for summary judgment on September 3, 2002.
 {¶ 3} The following facts are relevant to a determination of this appeal. Appellants owned a single family home located at 6300 Causeway Drive, in Cortland, Ohio ("the Cortland property"). They were building a home in Geauga County, so they tried to sell the Cortland property themselves at a listing price of $225,000. A few weeks later, they listed the Cortland property with Realty One at an asking price of $215,000. However, after several reductions in the price, appellants terminated their listing agreement with Realty One and again attempted to sell the Cortland property themselves. Appellants at that time were asking $158,000, but were unsuccessful. As a result, they contacted the Baiers to discuss an auction sale.
 {¶ 4} According to Mrs. Colburn, she told the Baiers that she wanted to have $135,000 out of the house, and they told her that she would get between $125,000 and $135,000.[1] The Baiers deny ever quoting her a dollar figure. In her deposition, Mrs. Colburn declared that she knew that at auctions, things generally sold to the highest bidders. She also stated that she understood the difference between a reserve auction and an absolute auction. Specifically, she explained that a "[r]eserve auction means that they can't go below a certain price. Whether it's bidded back in or they just stop the auction. * * * With an absolute auction people come thinking they are going to get a fabulous deal * * *." After meeting with the Baiers, appellants entered into an agreement with appellees to perform an absolute auction of the Cortland property. Appellants both averred that they understood what they had signed, and that they signed the document voluntarily. Appellants also avowed that they understood that an absolute auction was one where the property was sold to the highest bidder. Mr. Colburn maintained that he did not object in any way to the Cortland property being auctioned through an absolute auction. He further asserted that he was nervous about the auction because he knew that the Cortland property would sell to the highest bidder and that there were no guaranties made as to price.
 {¶ 5} In their deposition testimony, the Baiers maintained that Mrs. Colburn said she had to sell the Cortland property. They asked her whether she wanted to sell via an absolute or reserve auction, and she stated that there was no reason to go with the reserve auction because she would have to pay for advertising costs plus still have the Cortland property. Based on that conversation, the Baiers wrote up the agreement as an absolute auction. The Baiers stated that they did not discuss any numbers with appellants because there was no guarantee what amount would be received from an absolute auction.
 {¶ 6} The auction occurred on October 7, 2001. Mrs. Colburn left before the auction began, but signed a blank purchase agreement prior to leaving. Mr. Colburn was present for the entire auction. In his deposition, Mr. Colburn stated that he was not pleased with the turnout on the day of the auction. He explained that about twenty people attended, but he said that "[f]rom their [the Baiers'] conversation * * * [he] personally expected maybe 30 to 40 [people]." The highest bid for the property was $69,000. Mr. Colburn voluntarily signed the purchase agreement. According to Mr. Colburn, the Baiers told him that they tried their very best. He also recalled that he extended his hand and thanked them.
 {¶ 7} In a judgment entry dated October 24, 2002, the trial court granted appellees' motion for summary judgment and ordered that the case be dismissed at appellants' costs.[2] Appellants timely filed the instant appeal and now assign a single assignment of error:
 {¶ 8} "The [t]rial [c]ourt erred to the prejudice of [appellants] by granting [appellees'] motion for summary judgment."
 {¶ 9} Under their lone assignment of error, appellants claim that the trial court erred in granting summary judgment in favor of appellees. Appellants specifically argue that the CSPA applies to the instant matter, that there were material issues regarding allegations of fraud, and that the determination of professional negligence by a realtor does not require the testimony of an expert witness.
 {¶ 10} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385. The Supreme Court stated inDresher v. Burt (1996), 75 Ohio St.3d 280, 296:
 {¶ 11} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 12} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 13} The CSPA, which is contained in R.C. Chapter 1345, prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. The act is intended to be remedial and should be construed liberally in favor of consumers. Einhorn v. FordMotor Co. (1990), 48 Ohio St.3d 27, 29.
 {¶ 14} Whereas R.C. 1345.02 prohibits unfair or deceptive acts or practices, R.C. 1345.03 prohibits unconscionable acts or practices in connection with consumer transactions whether such acts or practices occur before, during, or after a transaction. In order to establish a CSPA violation, the court must determine that the transaction between the parties was one to which the CSPA applied. A "consumer transaction" is defined as any "sale, lease, assignment, award by chance, or other transfer of an item of goods * * * to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). However, this statute must be read in conjunction with R.C. 1345.02 and R.C.1345.03, which provide that a supplier is prohibited from doing certain things "in connection with a consumer transaction." The consumer need not prove that the supplier intended to commit an unfair or deceptive act to establish a violation of the CSPA, but only that such an act was committed. Garner v. Borcherding Buick, Inc. (1992), 84 Ohio App.3d 61,64.
 {¶ 15} Under Ohio law, the CSPA is not applicable to pure real estate transactions. Brown v. Liberty Clubs, Inc. (1989),45 Ohio St.3d 191, 195. The court in Rose v. Zaring Homes, Inc. (1997),122 Ohio App.3d 739, 746, held that a developer's sale of a real estate lot to purchasers for the construction of a new house did not constitute a "consumer transaction" within the CSPA and, therefore, was inapplicable to such transaction. "Real estate is not a `consumer transaction' because it does not fall within the definition of a good, service, franchise, or intangible as provided by the statute. * * * The sale of goods by auction is a consumer transaction as applied to an auctioneer and the purchaser
of an item; however, the relationship between an auctioneer and the ownerof the item to be auctioned does not constitute a consumer transaction." (Footnotes omitted.) (Emphasis added.) Elder v. Fischer (1998),129 Ohio App.3d 209, 216-217. However, the CSPA is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services and the transfer of real property. Brown, supra, syllabus.
 {¶ 16} In the case at bar, since there is no personal property involved in the dispute, the issue in this appeal is a determination of what is meant by the "services portion" of a mixed transaction. Appellants argue that the transaction in this matter is a mixed transaction involving both services and the transfer of real property. We, however, conclude that the CSPA is not applicable since the transaction in this matter was a pure real estate transaction. Appellants signed a purchase agreement agreeing to auction off the Cortland property through an absolute auction. Further, under the language of the agreement, there were no personal services to be performed by appellees for appellants. Therefore, the CSPA is inapplicable.
 {¶ 17} Additionally, after reviewing the deposition testimony of appellants, they both knew that the Cortland property was going to be auctioned via an absolute auction. They also stated that they voluntarily signed the agreement with appellees. Appellants acknowledged that they understood the difference between an absolute auction and a reserve auction. Mr. Colburn averred that he was nervous about the absolute auction because he knew the Cortland property would go to the highest bidder. He further recalled that the Baiers made no price guaranties.
 {¶ 18} A claim of fraud in the inducement arises when a party is induced to enter into a contract through fraud or misrepresentation, and the fraud relates not to the nature or purport of the contract, but to the facts inducing its execution. Haller v. Borror Corp. (1990),50 Ohio St.3d 10, 14. To demonstrate fraud in the inducement, the plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to his or her detriment. ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 502.
 {¶ 19} In the present matter, the language in Mrs. Colburn's deposition regarding the $135,000 selling price was in the nature of a general comment and was allegedly made at an "initial meeting" before the contract was signed. Our understanding of the record indicates that the Baiers did not couch their statement in promissory language that the sale of the Cortland property would result in the range between $125,000 to $135,000. The contract itself stated that the property shall be sold at an absolute auction to the highest bidder without limit, that appellants acknowledged that appellees did not make any representation or warranty as to the price that may be bid at the auction sale, and that there were no oral representations other than the terms set forth in the listing agreement.
 {¶ 20} Hence, in light of the contract itself, Mr. Colburn's statement that there were no guaranties, and appellees' denial that they made such a statement, Mrs. Colburn's deposition testimony does not rise to the level of creating a genuine issue of material fact regarding fraud in the inducement. We conclude that the trial court did not err in granting summary judgment to appellees on appellants' CSPA claims.
 {¶ 21} Furthermore, as to the allegation of fraud, any oral representations made to appellants that were not embodied in the listing agreement, or included therein by reference, are not part of the contract. See Marion Prod. Credit Assn. v. Cochran (1988),40 Ohio St.3d 265, paragraph four of the syllabus.
 {¶ 22} Accordingly, given the express language of the contract at issue, appellants could not sustain an action in fraud against appellees based on alleged misrepresentations that directly conflicted with provisions of the signed agreement. As already mentioned, appellants were aware of the difference between an absolute and reserve auction, and they still agreed to go forward with the absolute auction. Mr. Colburn stated that he knew that no price guaranties were made. Hence, there being no genuine issue of material facts, it is our view that the trial court did not err in granting summary judgment to appellees on the fraud claims.
 {¶ 23} As to the professional negligence claim, there was no evidence presented that appellees did not satisfy their duties as set forth in the listing agreement. Further, in their depositions, appellants indicated that they read and understood the agreement prior to signing it. They further acknowledged that they voluntarily signed it. Thus, whether an expert was needed is not at issue since there was no genuine issue of material fact as to the professional negligence claim. Accordingly, the trial court properly granted summary judgment as to this issue.
 {¶ 24} For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
Judith A. Christley and Diane V. Grendell, JJ., concur.
[1] This alleged statement was made during appellants' "initial meeting" with appellees, which was before the contract was signed.
[2] As an aside, this court would indicate that it was improper for the trial court to "dismiss" this case as part of the final judgment. When a defendant prevails in a summary judgment exercise, judgment should be rendered in favor of that party in regard to the plaintiff's claims or complaint. Thus, instead of dismissing the underlying case, the trial court should have rendered judgment in appellees' favor.