URBANEK, Appellant,

v.

**ALL STATE HOME MORTGAGE COMPANY et al., Appellees.**

[Cite as *Urbanek v. All State Home Mtge. Co.*, 178 Ohio App.3d 493, 2008-Ohio-4871.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90569.

Decided Sept. 25, 2008.

494

⚡34

Ott & Associates Co., L.P.A., Steven M. Ott, Latha M. Srinivasan, and Brandy M. Slates, for appellant.

Michael P. Harvey Co., L.P.A., and Michael P. Harvey, for appellees All State Home Mortgage and John Marinucci.

E. Daniel Mamrack, for appellees Ace Home Loans, Inc. and Neal Wolf.

Reminger & Reminger Co., L.P.A., and Todd M. Jacket, for appellee Jermaine Lockhart.

---

MELODY J. STEWART, Judge.

{¶ 1} Plaintiff-appellant Edward Urbanek appeals from summary judgments rendered in favor of defendants-appellees All State Home Mortgage Company, John Marinucci, Ace Home Loan, Inc., Neal Wolf, and Jermaine Lockhart on his claims for fraud, conversion, civil conspiracy, and violations of the Ohio Mortgage Broker Act. These claims arose in connection with Urbanek's purchase of three residential properties and the defendants' roles in brokering, financing, and obtaining appraisals for those properties. Urbanek lost all three properties in foreclosure and accused the defendants of conspiring against him to fraudulently inflate the true value of the properties so that the balance on the mortgages far exceeded the actual value of the properties. He maintains that he presented sufficient evidence to create genuine issues of material facts on all claims for relief. We find no error and affirm.

{¶ 2} Summary judgment may issue when, construing the disputed evidence most strongly in favor of the nonmoving party, there is no genuine issue of material fact and reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Civ.R. 56(C). Proper evidence to support a summary judgment motion or oppose the motion are pleadings, depositions, answers to interrogatories, written admission, affidavits, transcripts of evidence, and written stipulations of fact. Id. All State and Marinucci gave notice to the court and opposing parties that they had filed Urbanek's deposition, but the deposition is not contained in the record on appeal. When depositions are cited in dispositive motion practice, those depositions should be filed with the court. However, when

both parties cite the same deposition, an objection to the submission of the unfiled deposition testimony cannot be grounds for error. See *Dinnin v. Bencin* (July 30, 1998), Cuyahoga App. No. 73141, 1998 WL 433831. We are, however, limited to accepting as facts only those parts of the depositions that were actually appended to the briefs of the parties either in support of, or in opposition to, the various motions for summary judgment. *Blanton v. Cuyahoga Cty. Bd. of Elections,* 150 Ohio App.3d 61, 2002-Ohio-6044, 779 N.E.2d 788, ¶ 22.

{¶ 3} The record shows that Urbanek operated a landscaping business and began performing work for Marinucci, who worked for All State, a mortgage broker. At the time, Urbanek owned two industrial properties, but had used nonconventional financing to obtain them. He told Marinucci that he wanted to buy additional properties to "start developing a portfolio and build his credit," but Marinucci informed him that he would not be able to obtain a commercial loan given his prior use of nonconventional financing. Marinucci advised Urbanek to purchase three residential rental properties and hold them for 12 months in order to establish better credit.

{¶ 4} With the assistance of Marinucci and another All State employee named Aaron Short, Urbanek looked at three residential properties in the city of Cleveland. These properties were located on East 120th Street, Reno Avenue, and Ridgeton Avenue. Urbanek claimed that he dealt only with All State and agreed to pay the price quoted to him by All State, with no counteroffer to the seller. All State then arranged to have the properties appraised by independent contractors that it used on an "almost rotating schedule." One of the appraisers, Jermaine Lockhart, performed the appraisal on a property located on East 120th Street.

{¶ 5} All State put financing in place for the East 120th Street and Reno Avenue properties. During this time, All State terminated Short's employment because he failed to receive licensing from the state of Ohio as a loan officer. Short began working with Ace Home Loan as a loan processor. Urbanek decided to follow Short and used Ace Home Loan to obtain financing on the Ridgeton Avenue property. Neil Wolf served as Ace's loan officer.

{¶ 6} Urbanek claimed that Marinucci, Wolf, and Short had advised him that the Ridgeton Avenue property needed repairs and that only certain companies could be assigned to make the repairs because of the paperwork involved. At closing, the title company forwarded $14,186.34 to a company that Urbanek claimed was owned by Short's "lady friend or wife." Urbanek claimed that no repairs were made to the Ridgeton Avenue property.

{¶ 7} Even though all three properties closed, Urbanek did not receive the keys, nor did he receive rent payments from his tenants. He claimed that he had been led to believe that there were tenants living in the properties and that he

had telephone conversations with them, but that it was clear to him that "this was a ruse that was directed by Defendants Marinucci, All State, Short, Ace Home Loan, and Wolf, and perhaps the appraiser-defendants as well." Urbanek claimed that Short was collecting the rent money "from supposed tenants" and not turning it over to him.[1] Urbanek conceded, however, that he was in the state of Louisiana during much of this time and had assumed that his mother was collecting rent payments from the tenants.

{¶ 8} Urbanek defaulted on the loans. He tried to sell the properties, but learned from realtors that the properties were "over-inflated" given their location and general condition of the housing market in the city of Cleveland. The properties were sold in foreclosure for significantly less than Urbanek paid for them.

## I

{¶ 9} For his first assignment of error, Urbanek complains that the court erred by granting summary judgment to all defendants on his fraud claim. He argues that the evidence creates an issue of material fact as to whether the defendants arranged for inflated appraisals of each property at prices that duped him into purchasing properties that lacked their stated value.

{¶ 10} In *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, the Supreme Court stated the elements of actual fraud as "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

{¶ 11} A plaintiff who prosecutes a fraud claim has the burden of proving that the defendant knowingly and intentionally misled or deceived the plaintiff. *Doyle v. Fairfield Machine Co., Inc.* (1997), 120 Ohio App.3d 192, 208, 697 N.E.2d 667. This burden cannot be established by conjecture, but rather must be proved by "direct evidence or justifiable inferences from established facts." Id., citing *Pumphrey v. Quillen* (1955), 102 Ohio App. 173, 177, 141 N.E.2d 675.

## A

{¶ 12} Urbanek's complaint alleged that All State, through its agents Short and Marinucci, and Ace Home Loan, through its agents Short and Wolf,

---

1. Urbanek named Short as a defendant in this action and received a default judgment in the amount of $250,000. Short is not a party to this appeal.

made false representations of fact and concealments that it was "in Urbanek's best interest to purchase real properties in a short amount of time to avoid a record on his credit report in order to get more money on his loans."

{¶ 13} Assuming as we must that all of the defendants made such statements, Urbanek offered no evidence of any kind to show that they were made falsely and with knowledge of their falsity. He offered no evidence to establish his credit rating prior to obtaining the three properties, nor did he offer expert opinion to refute claims that he could more easily obtain credit for commercial property loans if he established a credit history with residential properties. The timely payment of loan obligations tends to bolster one's credit rating. While it has not been shown whether a successful history of credit in residential home loans will be advantageous to those seeking commercial loans, we fail to see how a good credit history in residential loans could be harmful to one seeking a commercial loan, particularly to a small businessman like Urbanek. He thus fails to show the falsity of statements made by All State, Marinucci, Ace Home Loan, Wolf, and Short relating to his need to improve his credit.

B

{¶ 14} Urbanek also alleged that Lockhart made a knowingly false misrepresentation of fact in his appraisal by overstating the value of the East 120th Street property and, in fact, arrived at that valuation "sometime during the period of Urbanek's transacting with Short and Marinucci, yet sometime before Urbanek actually signed the purchase agreements for the property."

{¶ 15} The evidence showed that Lockhart appraised the East 120th Street property for All State on February 28, 2005, for a person named "Milton." Urbanek signed the purchase agreement for the East 120th Street property on April 5, 2005. Lockhart performed the appraisal at All State's request, before Urbanek had even seen the property, much less made an offer on it. Urbanek offers no evidence to show that he relied on the appraisal when making his decision to purchase the property. He has therefore failed as a matter of law to establish the reliance element of fraud. See *Washington Mut. Bank F.A. v. Smith*, Lake App. No. 2001–L–238, 2002-Ohio-6910, 2002 WL 31812944, ¶ 27.

C

{¶ 16} Urbanek also alleged that All State and Marinucci falsely represented to him that the appraisals on all three properties were accurate despite being aware that the appraised values were significantly overinflated. He claims that they did so in order to obtain higher loan fees.

{¶ 17} Urbanek offered an expert report in support of his theory, but that report failed to substantiate his claim that the appraisals were intentionally overinflated. Urbanek's expert pointedly stated that "I have not, in my review, formed an opinion as to a value point for each of the properties." In fact, the expert noted that he had been unable to view the interiors of any of the three properties, so his assessment was limited to a review of listing records and previous sales prices. The expert did note that each of the properties was located "in neighborhoods under a high level of financial distress and the sales demonstrate a volatile market," but he could only point to the prior sales history of each property as opposed to appraised values of neighboring properties.

{¶ 18} Absent any expert opinion as to the value of the properties at the time the appraisals were made, Urbanek fails to show that the appraisals constituted false statements. Likewise, the expert's characterization of the neighborhood as being under a "high level of financial distress" was made in 2007, more than two years after Urbanek purchased the properties. The expert's report did not address the market situation at the time the appraisals were made. Without any discussion of then-existing market conditions and appraised values at the time of Urbanek's purchase, the expert's report has no evidentiary value on the issue of fraud. Urbanek has thus failed to offer any evidence to substantiate his claim that the appraisals were overinflated. The court did not err by granting summary judgment on the fraud claims.

## II

{¶ 19} The second assignment of error concerns the civil conspiracy claim. The elements of civil conspiracy are (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 292, 629 N.E.2d 28.

{¶ 20} Urbanek alleged that the defendants tried to defraud him by "agreeing to sell him as many properties as possible and inflate the values of the properties so as to charge higher fees for the loans." He also alleged that the defendants took advantage of him and that the loans were more than he could reasonably afford—a fact that the defendants were aware of given the overinflated appraisals on the property.

{¶ 21} There is no evidence to show that any of the defendants acted in concert in a manner that would constitute a conspiracy. Having found that Urbanek offered no evidence to create an issue of material fact as to the existence of any fraud committed by the defendants, he cannot as a matter of law prove a

conspiracy to commit fraud. See *Canfora v. Coiro,* Lake App. No. 2006–L–105, 2007-Ohio-2314, 2007 WL 1395590, ¶ 82.

## III

{¶ 22} The third assignment of error relates to the conversion claim against all defendants. Conversion consists of the following elements: (1) a plaintiff's actual or constructive possession or immediate right to possession of the property, (2) a defendant's wrongful interference with the plaintiff's right to possession, and (3) damages. *Allied Erecting & Dismantling Co., Inc. v. Youngstown,* 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶ 76. Urbanek alleged that All State, Marinucci, Ace Home Loan, and Wolf took money that Urbanek believed was to be used to effect repairs to one of the properties. He also alleged that he did not receive rent payments from tenants.

## A

{¶ 23} Urbanek offered no evidence of any kind to show that the defendants interfered with the money that had been earmarked for home repairs. In an affidavit filed in opposition to All State's motion for summary judgment, Urbanek averred that All State and Marinucci informed him that only certain home-repair companies could be assigned the repairs "due to what was required for the paperwork, but that the money would be returned to me to choose whatever company he wanted [sic]." A company named "On the Move" allegedly took the money. Apart from this evidence, Urbanek failed to demonstrate any connection between On the Move and any of the defendants sufficient to establish a question of material fact on the conversion claim. Indeed, Ace Home Loan offered unrebutted evidence to show that the closing statement for the Ridgeton Avenue property contained a deduction of funds to On the Move. It also offered a copy of the check made out by a title company to On the Move, thus establishing that the funds were directed to On the Move. Urbanek did not counter with any evidence to show that any of the defendants actually took possession of the funds.

{¶ 24} The only evidence offered by Urbanek consisted of a statement in his affidavit to the effect that he believed that On the Move was owned by Short's "lady friend or wife." As we earlier noted, a party may not oppose a motion for summary judgment by relying on conjecture. *Doyle v. Fairfield Machine Co., Inc.,* 120 Ohio App.3d 192, 697 N.E.2d 667. The parties engaged in extensive discovery, and Urbanek had ample opportunity to discover the connection, if any, between On the Move and Short's female acquaintance, so his failure to offer actual evidence on this point is telling. And even if we were to credit Urbanek's suspicion that his funds had been wrongfully converted, he did not name either On the Move or Short's "lady friend or wife" as a defendant in this action, even

though the evidence undeniably showed that On the Move received payment. If, as Urbanek alleged, the repairs were not made, his dispute is with On the Move, not the defendants. As a matter of law, Urbanek has shown no connection between the defendants and the alleged conversion of money intended for home repairs, so the court did not err by granting summary judgment on this part of the conversion claim.

## B

{¶ 25} Urbanek next argues that the defendants converted rent payments made by the tenants of the properties. He maintains that he never received the keys to the properties nor did he receive any rent payments, and "it is now clear that this was a ruse that was directed by [defendants]."

{¶ 26} Again, Urbanek offers no evidence to support his argument that rent payments were wrongfully converted by the defendants. His argument in this respect relies on the same conjecture he has employed throughout this case: he received no rent payments, and therefore the defendants must have converted those payments. Urbanek offers no evidence of any kind to show what arrangements he made with his tenants for collecting rent. More important, he has not offered any evidence to show that any of the tenants actually made rent payments and that those payments were directed to any of the defendants. As the landlord of three properties, it fell to Urbanek to ensure that he received the keys to his properties from the seller and that he collected rent from his tenants. Urbanek has failed to demonstrate how defendants had any role with regard to obtaining keys and collecting rent payments. The defendants were not real estate agents, but mortgage brokers and loan officers. There is no legal or factual support for Urbanek's claim that the defendants converted rent payments. The court did not err by granting summary judgment on the conversion claim.

## IV

{¶ 27} Urbanek's fourth assignment of error complains that the court erred by granting summary judgment on his claim against All State, Marinucci, Ace Home Loan, and Wolf on his claim that they had engaged in improper, fraudulent, or dishonest dealings as prohibited by the Ohio Mortgage Broker Act. He maintains that the defendants misled him into purchasing property that they knew he could not afford and that they inflated the value of the three properties.

{¶ 28} As applicable to this case, R.C. 1322.07 states:

{¶ 29} "No mortgage broker, registrant, licensee, or applicant for a certificate of registration or license under sections 1322.01 to 1322.12 of the Revised Code shall do any of the following:

{¶ 30} " * * *

{¶ 31} "(B) Make false or misleading statements of a material fact, omissions of statements required by state law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations;

{¶ 32} "(C) Engage in conduct that constitutes improper, fraudulent, or dishonest dealings;

{¶ 33} " * * *

{¶ 34} "(E) Knowingly make, propose, or solicit fraudulent, false, or misleading statements on any mortgage document or on any document related to a mortgage, including a mortgage application, real estate appraisal, or real estate settlement or closing document.  For purposes of this division, 'fraudulent, false, or misleading statements' does not include mathematical errors, inadvertent transposition of numbers, typographical errors, or any other bona fide error."

{¶ 35} In support of this assignment of error, Urbanek argues that the defendants and their agents failed to disclose the true value of the properties, the "dilapidated condition of the neighborhood, the declining sales, and the increase in foreclosures."  None of these allegations rise to the level of a violation of the Ohio Mortgage Brokers Act and, in fact, amount to nothing more than a rehash of arguments we have previously rejected in this opinion.

{¶ 36} When viewed most favorably to Urbanek, the facts do not show that the defendants engaged in fraudulent conduct prohibited by the Ohio Mortgage Brokers Act, but rather that he failed to conduct any due diligence on the properties.  Urbanek did not use the services of a real estate agent or an attorney when closing on the property, and he admitted to paying the asking price for each property with no counteroffer of any kind.  He did not even bother to obtain the keys to the properties that he purchased.  The status of the neighboring properties should have been obvious to him when he visited each of the three properties, so he cannot reasonably claim that the defendants hid the true character of the neighborhood from him.  The foreclosure rate in each of the neighborhoods was a matter of public record that he could have researched before paying the asking price for the properties.

{¶ 37} Urbanek's ability to afford the properties should have been known by him at the time of purchase.  He admitted that he could not afford the properties without the rent payments, so it was incumbent upon him as a prospective landlord to conduct some due diligence to verify rent receipts.  He did not do so apart from speaking with the tenants and later concluding, with no evidence of any kind, that these "tenants" were simply associates of the defendants who were not actually living in his properties but were instead perpetuating an elaborate

fraud against him. Through it all, Urbanek was out of state, making it difficult to enforce his rights as a landlord. These were not the defendants' failures. The absence of any evidence to show facts to support a claim under the Ohio Mortgage Brokers Act convinces us that the court did not err by granting summary judgment.

## V

{¶ 38} For his fifth assignment of error, Urbanek argues that the court's summary judgment was against the manifest weight of the evidence. We summarily overrule this assignment of error because a summary judgment cannot be entered upon any weighing of facts—the facts must all be viewed in a light most favorable to the nonmoving party. A claim that the court improperly weighed the evidence in a summary judgment motion is a non-sequitur. *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL–CIO* (1994), 93 Ohio App.3d 162, 165, 638 N.E.2d 94; *Lopez v. Dave's Supermarket,* Cuyahoga App. No. 81549, 2003-Ohio-1350, 2003 WL 1361670, ¶ 8.

Judgment affirmed.

ANTHONY O. CALABRESE JR., P.J., and FRANK D. CELEBREZZE JR., J., concur.