[Cite as *U.S. Bank v. Amir*, 2012-Ohio-2772.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97438**

## U.S. BANK, ETC., ET AL.

PLAINTIFFS-APPELLEES

vs.

## CYNTHIA AMIR, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-594212

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

**ATTORNEYS FOR APPELLANTS**

Darryl E. Pittman
James Alexander, Jr.
Pittman, Alexander Attorneys
2490 Lee Boulevard, Suite 115
Cleveland Heights, OH   44118

Michael Aten
The Leader Building
526 Superior Avenue, East
Suite 455
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEES**

**For Anthony Capuozzo**

Anthony Capuozzo, pro se
35401 Euclid Avenue, #215
Willoughby, OH   44094

**For Family Title Services, Inc., et al.**

Family Title Services, Inc.
35401 Euclid Avenue #215
Willoughby, OH   44094

**For Robert J. Hudak and Hudak Appraisal Services**

Thomas J. Connick
James P. Sammon
Anthony J. Trzaska
Dubyak, Connick, Thompson & Bloom, LLC
3401 Enterprise Parkway, Suite 205
Cleveland, OH   44122
**Also listed:**
**For Simon Zeller**

William T. Zaffiro, Jr.

5495 Mayfield Road
Lyndhurst, OH   44124

SEAN C. GALLAGHER, J.:

{¶1} Appellants, Cynthia Amir and Yohance Amir, appeal the rulings of the Cuyahoga County Court of Common Pleas that excluded certain testimony and evidence from trial and that granted a directed verdict against appellants on the claims presented at trial.   For the reasons stated herein, we affirm.

{¶2} This case began as a foreclosure action brought against the Amirs by U.S. Bank in 2006.   The action pertained to property located at 1415 E. 80th Street in Cleveland (hereafter "the property" or "the home").   The Amirs purchased the property on or about February 17, 2005, from Simon Zeller.

{¶3} The Amirs filed an amended answer, counterclaim, and third-party complaint, naming various third parties to the action, including the appellees, Robert J. Hudak and Hudak Appraisal Services (collectively "Hudak") and Anthony Capuozzo and Family Title Services (collectively "Capuozzo").   The Amirs claimed that they were the victims of a property-flipping scheme.   They alleged that the appellees conspired with other parties and induced them to purchase the property through fraudulent misrepresentations and the use of false loan documents and a fraudulent appraisal.

{¶4} The claims between U.S. Bank and the Amirs were settled, and the parties entered a stipulated dismissal.   Multiple other third-party defendants were dismissed over the course of proceedings.   The court eventually instructed all remaining parties to file a notice of intent to proceed on pending claims.   The Amirs filed a notice of intent to

proceed with their outstanding claims against Robert Hudak, Anthony Capuozzo, and Family Title Services, as well as their claims for damages against Simon Zeller, against whom summary judgment as to liability had been granted.[1]  The court issued an order recognizing these claims remained and dismissed any other pending claims.

{¶5} Among other motions, Hudak filed a motion in limine to exclude the testimony of the Amirs' proposed expert Donald Durrah on the basis that he failed to establish an opinion of the property's value to a reasonable degree of appraisal certainty. Hudak also filed a motion in limine to exclude the proffer of any evidence or testimony of any criminal convictions or pleas of any other present or former party to the case in an attempt to infer liability against Hudak.   These motions were granted by the trial court.

{¶6} The Amirs' case against Hudak and Capuozzo proceeded to trial on appellants' claims of fraud, civil conspiracy, violation of the Ohio Corrupt Practices Act, and violation of the Ohio Consumer Sales Practices Act ("CSPA").   The Amirs only filed a partial transcript of proceedings for review by this court, which is permitted by the appellate rules.  *See* App.R. 9(B).   However, we are mindful that an appellant bears the burden of demonstrating error and, in the absence of such an affirmative showing, this court must presume the regularity of the trial court's proceedings.  *See Weir v. Krystie's Dance Academy*, 11th Dist. No. 2007-T-0050, 2007-Ohio-5910, ¶ 16; *McEwen v. Doyle*, 5th Dist. No. CA-8939, 1992 WL 330310 (Nov. 9, 1992).

---

[1]  The court later entered a judgment granting damages against Zeller.

**{¶7}** Yohance Amir testified that when he first saw the home, it was under renovation and had been freshly painted. It had seven bedrooms and one kitchen and was represented as a single-family home. Each time he went into the home, he observed workers in the house, and he described the house as looking "better and better."

**{¶8}** While meeting with Nick Myles of Central National Mortgage for financing, Yohance observed comparables being faxed to Myles, who purportedly was on the phone with Hudak. Yohance testified that Myles indicated the comparables reflected what the home was worth. Yohance understood that the appraisal would have to support the amount of the loan request. Yohance never met or spoke to Hudak. He claimed he provided Myles with $400 for the cost of the appraisal.

**{¶9}** Eventually, Myles informed Yohance that he could not get financed and his wife's credit would need to be used. Cynthia Amir signed the purchase agreement on February 17, 2005.

**{¶10}** Before closing, Yohance spoke with Capuozzo of Family Title, which handled the title work for the home. Yohance was left with the impression that it was a good deal. Yohance conceded his monthly payment would be less than he was currently paying for rent. He also claimed he viewed a HUD statement that showed Hudak was to be paid upon the settlement of the house.

**{¶11}** Hudak viewed the home for the appraisal on or about March 10, 2005. He issued an appraisal report on March 17, 2005, in which he valued the home at $100,000. In his appraisal, Hudak indicated that the property was zoned two-family and that the

property had been converted to a single-family dwelling. He further indicated that the property had been renovated throughout "in a very professional manner." Hudak indicated in his deposition that he is not a home inspector or a construction expert. Yohance did not see the appraisal until after moving into the house.

{¶12} Yohance testified that ongoing work was being performed on the home right up until the Amirs moved in on March 22, 2005. At one point, he viewed workers cutting joists in the upstairs bathroom. The Amirs never obtained an inspector to inspect the quality of work prior to purchasing the home.

{¶13} After moving in, the Amirs encountered many problems with the workmanship in the house, including the drywall work, plumbing work, flooring work, and electrical work. They discovered that the home previously had two furnaces and that one of the furnaces was removed. The Amirs made numerous repairs to the home and claimed their energy bills increased dramatically. They did not offer evidence as to the amount expended on repairs or produce any energy bills reflecting the increased costs.

{¶14} Because the Amirs were unable to make their payments on the home, a foreclosure action was brought against them. The Amirs were eventually relieved of the debt on the home. At the time of trial, they were still residing in the home.

{¶15} Angelo Michael Amato, who is a real estate investor and is in the construction business, testified that he viewed the home in 2010 in connection with the review of the property by Donald Durrah, who was the Amirs' expert. Amato indicated that the property was a two-family home that was not properly converted into a

single-family home and that it had multiple code violations. He testified to various problems throughout the entire home and to his belief that the home had not been properly renovated. He also testified to his belief that the home should be reconstructed as a two-family home and estimated a cost of $85,000. He conceded that he did not view the home in 2005, he was not aware of the condition of the home in 2005, and he was not aware of what conditions may have changed in the home between 2005 and 2010. With regard to Capuozzo and Family Title Services, Amato acknowledged that a title company does not determine a value of property.

{¶16} Ultimately, the trial court granted a directed verdict against the Amirs on all claims. This appeal followed.[2]

{¶17} The Amirs raise seven assignments of error for our review. Their first assignment of error provides as follows: "1. The trial court abused its discretion when it excluded the testimony of appellants' expert witness Donald Durrah."

{¶18} A trial court's decision concerning the admissibility of expert testimony is reviewed for an abuse of discretion. *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9. Likewise, a trial court's ruling on a motion in limine is reviewed for an abuse of discretion. *Sokolovic v. Hamilton*, 195 Ohio App.3d 406, 2011-Ohio-4638, 960 N.E.2d 510, ¶ 13 (8th Dist.). An abuse of discretion suggests

---

[2] We note that Capuozzo and Family Title Services have not filed an appellate brief.

unreasonableness, arbitrariness, or unconscionability in the trial court's decision. *Valentine* at ¶ 9.

**{¶19}** An appraisal is defined as "a valuation of property by the estimate of an authorized person." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/appraisal (accessed May 29, 2012). Hudak's appraisal valued the subject property at $100,000.

**{¶20}** The Amirs sought to use their appraisal expert, Donald Durrah, to attack the credibility of the appraisal performed by Hudak. In his report, Durrah identified several purported misleading and incorrect statements in Hudak's appraisal. He opined that the appraisal was not performed in conformance with the Uniform Standards of Professional Appraisal Practice.[3] One of his primary concerns, as expressed in his deposition, was his belief that the property had not actually been converted to a single-family home. However, he had no evidence that Hudak intentionally misled anyone. He offers no opinion as to what the value of the property should have been in March 2005 and nowhere states that the value established by Hudak was incorrect. Further, he references no other comparable homes from the relevant time to establish that the appraisal was overinflated. Rather, as he expressed during his deposition, he would only be testifying at trial to the alleged errors he found in Hudak's report and how that affected the credibility of the appraisal.

---

[3] The applicable USPAP standards were not filed with the lower court and are not in the record for review.

{¶21} Insofar as the Amirs contend that Hudak made misrepresentations as to the characteristics of the dwelling, the record reflects that the Amirs did not view the appraisal report until after they moved into the home.[4] As discussed later, the Amirs failed to establish that they justifiably relied on the appraisal or were otherwise misled by Hudak. Further, we are unpersuaded by the Amirs' reliance on a Maryland case that found evidence to support a claim of indirect reliance on the appraised value of property. *See Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (Md.2005). The expert in that case provided evidence of overinflated values by identifying comparable sales from the time of the appraisal that were ignored. *Id.* Here, even accepting the argument that an appraised value may be inherently relied upon in the purchase of property, there remains no evidence that the appraised value was overinflated in this matter. In the absence of an opinion on the property's value at the time the appraisal was made, Durrah's testimony and his report were devoid of any evidentiary value in this case. *See Urbanek v. All State Home Mtge. Co.*, 178 Ohio App.3d 493, 2008-Ohio-4871, 898 N.E.2d 1015, ¶ 18 (8th Dist.) (finding expert report that offered no opinion as to value failed to substantiate a claim that appraisals were overinflated). Accordingly, we find no abuse of discretion by the trial court in excluding this evidence.

---

[4] This case is distinguishable from *Natl. City Mtge. Co. v. Gingo Appraisal Servs., Inc.*, 9th Dist. No. 24123, 2008-Ohio-4074. In *Gingo*, a lending institution was in possession of an alleged negligent appraisal that was relied upon in lending money against a property that went into foreclosure and resulted in an uninsured loss.

{¶22} The Amirs also claim that the trial court improperly excluded evidence of the value of the property through the Cuyahoga County Fiscal Office. The Amirs intended to introduce evidence of the appraisal value through the county auditor. Neither the witness nor this evidence was disclosed prior to trial, and Hudak had no opportunity to depose the county's appraiser. Because the admission of the evidence would have resulted in an unfair surprise and been prejudicial to Hudak, the trial court's decision to exclude it was not an abuse of discretion.

{¶23} Finding no abuse of discretion by the trial court, appellants' first assignment of error is overruled.

{¶24} The Amirs' second assignment of error provides as follows: "The trial court abused its discretion in excluding the statements of Anthony Capuozzo and Nicholas Myles detailing appellees' participation in an enterprise engaged in property flipping and mortgage fraud."

{¶25} The Amirs contend that statements from Capuozzo and Myles were improperly excluded by the trial court. They sought to introduce these statements to support their claim of a conspiracy.

{¶26} There is nothing in the record before us that shows Capuozzo's statement was proffered into evidence at trial. A trial court's ruling on a motion in limine is tentative and precautionary in nature because the trial court is at liberty to change its ruling on the disputed evidence at trial. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, ¶ 17. As such, a ruling on a motion in limine may not

be appealed unless the claimed error is preserved by an objection made during trial. *See Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 34. Because the Amirs failed to proffer Capuozzo's statement or object to its exclusion during trial, they failed to preserve this challenge for appeal.

{¶27} With regard to Myles's statement, it is conceded that this evidence was proffered at trial. A review of Myles's statement reflects that it does not mention Hudak or implicate him in the fraudulent scheme to which Myles confessed. Further, the sale of the property to the Amirs was outside of the date range and not included in the properties that were subject to the admitted scheme. The statement reflects that the first properties involved in the scheme were purchased in March or April 2005, which was after the sale of the property to the Amirs. Additionally, the consent judgment entry that was entered in this case by Central National Mortgage and Nick Myles was ordered to have "no effect on the Amirs' claims against any other Third-Party Defendant." Even if this evidence were admissible and relevant to the conspiracy claim as argued by the appellants, the trial court properly excluded it because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403(A). Therefore, appellants' second assignment of error is overruled.

{¶28} The Amirs' third assignment of error provides as follows: "The trial court erred when it granted appellees' motion for directed verdict on all of appellants' claims."

{¶29} We employ a de novo standard of review in evaluating the grant or denial of a motion for directed verdict. *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189,

843 N.E.2d 1170, ¶ 14.   A motion for directed verdict is properly granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."   Civ.R. 50(A)(4).

**{¶30}** Under this assignment of error, the appellants make a conclusive assertion that the trial court failed to adhere to the standards for determining directed verdicts and erroneously granted verdicts to appellees.   Because they fail to develop their argument and do not cite to error in the record, we may disregard this assignment of error.   App.R. 12(A)(2) and 16(A)(7).   Further, we reiterate that our review is de novo.

**{¶31}** The Amirs' fourth assignment of error provides as follows:   "The trial court erred when it granted appellees' motion for directed verdict on appellant's fraud claim."

**{¶32}** To succeed on a fraud claim, a plaintiff must show

> (1) a representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27, citing *Burr v. Bd. of Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986).

**{¶33}** Ohio appellate courts have recognized that an appraiser can be held liable in tort for a negligently or fraudulently prepared appraisal despite the absence of privity.

*E.g., Rece v. Dominion Homes, Inc.*, 10th Dist. No. 07-AP-295, 2008-Ohio-24; *Washington Mut. Bank v. Smith*, 11th Dist. No. 2001-L-238, 2002-Ohio-6910; *Perpetual Fed. S. & L. Assn. v. Porter & Peck, Inc.*, 80 Ohio App.3d 569, 572, 609 N.E.2d 1324 (10th Dist.1992); *but see Trustcorp Mtge. Co. v. Zajac*, 1st Dist. No. C-060119, 2006-Ohio-6621 (declining to extend this view to appraisers). While the Ohio Supreme Court has not examined the issue with respect to appraisers, it has found that "an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 157, 436 N.E.2d 212 (1982) (applying Restatement of Torts 2d, 126-127 Section 552). The appellate courts have applied these same considerations to appraisers.

{¶34} In *Washington Mut.*, the court found that "an appraiser preparing a report for a lending institution should foresee that the purchaser of the property listed on the appraisal form could be within the limited class of persons who would rely on the appraisal." *Id.* at ¶ 26. The court recognized that purchasers have an obligation to exercise their independent judgment when determining the value of the home they intend to purchase. *Id.* at ¶ 27. However, the court noted that it "can foresee circumstances where an unsophisticated consumer could be duped into the purchase of an overpriced property acting in reliance on an appraisal that was negligently or fraudulently prepared." *Id.* The court determined that "[u]nder this narrow set of circumstances, where the purchaser can demonstrate reliance on the appraisal, recovery from the appraiser may be

appropriate." Recognizing that reliance on the appraisal must be shown, the court averred that "[e]vidence that appellants executed the purchase agreement before receiving a copy of the appraisal would strongly suggest * * * that the appellants did not rely on the appraisal." *Id*. at ¶ 29; *see also Rece* at ¶ 34-38 (evidence showed a lack of justifiable reliance where appraisal was performed after the purchase contract was entered and the appraisal was not read before closing on the home).

{¶35} In this case, the appraised value of the property was predicated on the home's conversion to a single-family home. There was no evidence that the appraisal was made with an intent to mislead the Amirs. Further, Cynthia Amir signed the purchase agreement before the appraisal was performed and Yohance testified that they did not look at the appraisal until after they moved into the home. The fact that Yohance observed comparables being faxed to Myles from Hudak was simply insufficient to establish justifiable reliance on the appraisal or the representations contained therein. The Amirs had ample opportunity to view the home and the work being performed therein. They chose not to have an independent inspection performed upon the home. Further, while the Amirs sought to undermine the credibility of the appraisal, they failed to offer admissible evidence to establish that the house was not worth the appraised value.

{¶36} Likewise, there was a lack of evidence to support any claim of justifiable reliance on the documents prepared by Capuozzo. Capuozzo's testimony was not included in the record for our review. While the Amirs claim there was evidence that

showed Capuozzo prepared multiple closing statements that misrepresented the amount of closing costs and the amounts paid to the Amirs, there is no evidence that the Amirs justifiably relied on these documents when making the decision to purchase the home. Further, Capuozzo did not value the home.

{¶37} Because there was a lack of evidence upon which reasonable minds could find in favor of the Amirs, the appellees were entitled to a directed verdict on the fraud claim. Appellants' fourth assignment of error is overruled.

{¶38} The Amirs' fifth assignment of error provides, "The trial court erred when it granted appellees' motion for directed verdict on appellant's civil conspiracy claim." Their sixth assignment of error provides, "The trial court erred when it granted appellees' motion for directed verdict on appellants' Corrupt Practices Act claims."

{¶39} To establish a civil-conspiracy claim, the plaintiff must prove: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. *Urbanek*, 178 Ohio App.3d 493, 2008-Ohio-4871, 898 N.E.2d 1015, ¶ 19 (8th Dist.), citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 292, 629 N.E.2d 28 (8th Dist.1993); *see also Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859. To prevail on a claim under the Ohio Corrupt Practices Act for engaging in a pattern in corrupt activity, as defined under R.C. 2923.32(A)(1), a plaintiff must establish that the defendant was employed by or associated with an enterprise and that the defendant directed or participated in the

enterprise's affairs through a pattern of corrupt activity. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 36 (10th Dist.). "Corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" certain criminal offenses listed under R.C. 2923.31(I).

{¶40} When construed in a light most favorable to appellants, we find the evidence in the limited record before us fails to show that appellees were involved in a conspiracy or associated with an illegal enterprise. Further, the evidence fails to show appellees were involved in an underlying fraud or engaged in any unlawful act. Accordingly, appellees were entitled to a directed verdict on these claims, and we overrule the fifth and sixth assignments of error.

{¶41} The Amirs' seventh assignment of error provides as follows: "The trial court erred when it granted appellees' motion for directed verdict on appellants' Consumer Sales Practices Act claim."

{¶42} "The CSPA, which is contained in R.C. Chapter 1345, prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Colburn v. Baier Realty & Auctioneers*, 11th Dist. No. 02-T-0161, 2003-Ohio-6694, ¶ 13. The Ohio Supreme Court has recognized that the CSPA has "no application in a 'pure' real estate transaction." *Brown v. Liberty Clubs, Inc.*, 45 Ohio St.3d 191, 193, 543 N.E.2d 783 (1989). However, the CSPA "is applicable to the personal property or services portion of a mixed transaction involving both the transfer of

personal property or services and the transfer of real property." *Id*. at syllabus. With regard to collateral services that are solely associated with the sale of real estate and are necessary to effectuate a "pure" real estate transaction, the CSPA does not apply. *Hurst v. Ent. Title Agency*, 157 Ohio App.3d 133, 2004-Ohio-2307, 808 N.E.2d 689, ¶ 34-35 (11th Dist.); *Colburn* at ¶ 16.

**{¶43}** The appraisal services performed by Hudak and the title services performed by Capuozzo were collateral services solely associated with the sale of real estate. Therefore, the claims involve a pure real estate transaction and the CSPA is not applicable. The trial court properly granted a directed verdict on this claim. Appellants' seventh assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR