[Cite as *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### WYANDOT COUNTY

WARNECKE,

      APPELLANT,

      CASE NO. 16-10-11

      v.

CHANEY ET AL.,

      O P I N I O N

      APPELLEES.

Appeal from Wyandot County Common Pleas Court

Trial Court No. 09 CV 0176

Judgment Affirmed

Date of Decision:   June 20, 2011

APPEARANCES:

      **Charles R. Hall Jr.,** for appellant.

      **Dennis E. Pfeifer,** for appellees.

**SHAW, Judge.**

{¶1} Appellant, Donna Warnecke ("Donna"), appeals the October 8, 2010 judgment of the Wyandot County Court of Common Pleas dismissing her claims for conversion, fraud, and unjust enrichment against appellees, Valli Chaney ("Valli") and Jim Chaney ("Jim").

{¶2} Donna is Valli's mother. In 2005, Valli made arrangements for Donna to move from her home in Fostoria, Ohio, to McCutchenville, Ohio, where Valli resides. Donna's health was deteriorating, and it was no longer practical for her to live in her five-bedroom house in Fostoria, which also required maintaining a swimming pool and a large yard. In addition, Donna's move to McCutchenville ensured that Valli could check in on her elderly mother more frequently than before.

{¶3} Donna agreed to put her house in Fostoria on the market, and Valli began looking for a house for Donna in McCutchenville. After failing to find a suitable house for Donna, Valli offered to allow Donna to live in one of her rental properties in McCutchenville, located at 143 Clay Street, which also happened to be situated next to the home of Donna's other daughter, Vicky. Valli bought the home in 2000 for $35,000 and spent $10,000 on renovations to make the house rentable. Since that time, Valli rented the house for $400 a month.

{¶4} It is undisputed by the parties that Valli's rental house was not big enough for Donna's belongings and that Donna needed a larger bedroom. Valli's husband, Jim, owns a contracting business and agreed to remodel the home to accommodate Donna's needs. Valli and Jim testified that the agreement with Donna was that she would pay for the remodeling and, in return, she would live in the house rent free for the remainder of her life. Valli also testified that she agreed to pay all the expenses related to the house and that she and Jim would cook, clean, and take care of the yard work for Donna. The only expense Donna would be responsible for was the cost of her utilities. This alleged agreement, however, was never reduced to writing.

{¶5} On May 11, 2005, Jim's company began work on the improvements. Donna lived with Valli and Jim while the construction took place. Jim testified that his company built a 20 foot by 40 foot addition on a poured concrete slab, which included a new bedroom and living room; installed a new front porch on the front of the property with a sitting area; and remodeled the garage. Jim explained that the house was also modified to make it more convenient for Donna by removing steps and other obstacles that may be difficult for her to traverse. Jim's company finished the project on September 23, 2005. Donna subsequently moved into the residence. Both Jim and Valli recalled that Donna was very pleased with the renovations.

{¶6} Shortly after the renovations were complete, Jim submitted an invoice to Donna that reflected that the cost of the entire project was $69,926 ($36,016 for materials and $33,910 for the labor). The invoice noted that Donna made two payments toward the final balance in the amounts of $8,300 on June 16, 2005, and $9,993 on June 17, 2005. According to the testimony at trial, the remaining $51,633 for the renovations was to be taken out of the proceeds from the sale of Donna's home in Fostoria. However, at the time Donna's house had not yet sold and was still on the market. Jim testified that in the interim Valli covered the cost of the renovations by paying the remaining balance out of her savings account.

{¶7} On November 10, 2006, nearly 14 months after the renovations were completed, Donna's home in Fostoria sold. Jim accompanied Donna to the closing. Donna received a check for $73,517.58 from the sale of her home. After the closing, Donna and Jim went to the bank and deposited $51,633—the balance for the cost of the improvements—into Valli's savings account. The rest of the sale proceeds were deposited into Donna's account.

{¶8} Several months later, on June 7, 2007, Donna met with her attorney, Clair Forrest, to discuss a number of estate-planning and financial matters. Among the things discussed was Donna's interest in the 143 Clay Street property. Donna claimed that she paid Valli and Jim $71,126 (the cost of the remodeling

plus $1,200 for the furnace) to purchase the 143 Clay Street property but had yet to receive the deed.

{¶9} Valli and Jim were surprised to discover that Donna believed the money she paid them was for the purchase of the property and not the remodeling. The parties attempted to reach an agreement on the matter but failed to settle their differences.

{¶10} On September 25, 2009, Donna filed this action against Valli and Jim alleging conversion, negligence, unjust enrichment, and fraud. Jim and Valli timely filed an answer. Prior to trial, Donna informed the trial court that she was not going to proceed on her negligence claim.

{¶11} On August 11, 2010, the case was heard before the bench. On October 8, 2010, the trial court issued its decision on the matter. The trial court found that Donna failed to present sufficient evidence to support her case and dismissed her claims for conversion, unjust enrichment, and fraud against Valli and Jim. Notably, Donna remained living in the house while these proceedings were pending.

{¶12} Donna now appeals, asserting the following assignment of error.

### ASSIGNMENT OF ERROR

The decision of the trial court regarding the plaintiff's claims for conversion, unjust enrichment and fraud was against the manifest weight of the evidence.

{¶13} At the outset, we note that a civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures. *Seasons Coal Co.* at 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. at 81.

{¶14} On appeal, Donna argues that the trial court's decision to dismiss her claims for conversion, unjust enrichment, and fraud is against the manifest weight

of the evidence. We will address the trial court's decision as to each of Donna's claims in turn.

*1. Conversion*

{¶15} Donna contends that the trial court erred in finding that Valli and Jim did not commit conversion when they failed to transfer the deed to her for the property after she paid for the cost of the improvements performed by Jim. Conversion is the " 'wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.' " *State ex rel. Toma v. Corrigan* (2001), 92 Ohio St.3d 589, 592, 752 N.E.2d 281, quoting *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. "The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Miller v. Cass*, 3rd Dist. No. 3-09-15, 2010-Ohio-1930, ¶ 32, quoting *Dice v. White Family Cos., Inc.,* 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶ 17.

{¶16} Here, the trial court found that there was no evidence of an agreement between the parties that Donna was purchasing the property with the money that she gave to Jim and Valli to pay for the improvements. Thus, there was no evidence that Donna obtained an ownership interest in the home. The trial

court also concluded that based on the evidence at trial, Donna had incurred an antecedent debt for the cost of the improvements. Accordingly, the trial court determined that this debt was extinguished at the moment Donna transferred the proceeds from the sale of her Fostoria home to Jim. Therefore, the trial court held that the funds ceased to be Donna's and that she consequently had no ownership rights to the money she paid to Valli and Jim for the balance of the improvements' cost.

{¶17} The parties' testimony at trial concerning their agreement was surprisingly similar. Valli, Jim, and Donna each testified that the essential terms of the agreement were that Donna could move into Valli's rental home, live there rent free for the remainder of her life, and the only bills she would be responsible for were her utilities. The evidence also demonstrates that Donna would not have moved into the rental house unless the renovations were made.

{¶18} Notably, Donna failed to voice any objections when Jim submitted an invoice to her in September 2005 detailing the cost of the improvements. Once Donna's house sold in November 2006, Jim accompanied her to the closing and subsequently to the bank with the understanding that the remaining balance for the cost of the remodeling would be paid out of the proceeds from the sale. There is no evidence before the trial court that Donna objected to transferring this money into Valli's account to satisfy this debt. Moreover, Donna testified that she had

owned five houses during her lifetime and was familiar with real-estate-closing procedures. Nevertheless, it was not until eight months later, in June 2007, when Donna first mentioned that she believed she was entitled to the deed to the property for the money she paid for the renovations.

{¶19} Although Donna may have misunderstood the legal consequences of paying for the improvements, there is no evidence of an agreement between the parties that Valli would transfer the deed to Donna after she had paid for the cost of the remodeling. Furthermore, Donna admitted that no one made her any promises concerning the property. Simply put, the evidence fails to demonstrate that Donna had any ownership rights to the property, let alone to substantiate her claim that Jim and Valli wrongfully exercised dominion over her property to the exclusion of her ownership rights. Accordingly, we conclude that the trial court's decision to dismiss Donna's claim for conversion is supported by some competent, credible evidence going to all the essential elements of the case and is not against the manifest weight of the evidence.

2. *Unjust Enrichment*

{¶20} Donna maintains that the trial court erred in finding that Valli and Jim were not unjustly enriched by Donna's payment for the renovations. Donna also asserts that she received no benefit for the money that she expended to improve Valli's property.

{¶21} The elements of an unjust-enrichment claim are as follows: (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances in which it would be unjust to do so without payment. *City Rentals, Inc. v. Kesler*, 191 Ohio App.3d 474, 2010-Ohio-6264, 946 N.E.2d 785, ¶ 12, citing *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298.

{¶22} Initially, we note that the trial court determined that Donna did in fact receive a benefit from Valli and Jim because she has lived on the property rent free for the past five years and continues to do so, with no expenses other than her monthly utilities. Moreover, at the time of trial, Jim and Valli had already lost $25,000 in foregone rent since Donna moved into the residence in September 2005. The testimony also reveals that Valli and Jim were willing to honor their agreement with Donna and permit her to live in the residence for the remainder of her life, despite the potential outcomes of these proceedings. Furthermore, the evidence shows that the improvements were made only to accommodate Donna, and that Jim and Valli could have continued to collect rent from the property in its condition prior to the renovations but chose to forego that income to ensure that Donna lived in a suitable home close to her family. Notwithstanding the apparent benefit received by Donna in this arrangement, there is no evidence to suggest that

Valli and Jim received and retained a benefit at Donna's expense when it would be unjust to do so without payment.

{¶23} Therefore, we conclude that the trial court's finding that Donna failed to establish she is entitled to recovery on the basis of unjust enrichment is not against the manifest weight of the evidence because it is supported by some competent, credible evidence going to all the essential elements of the case.

*3. Fraud*

{¶24} Finally, Donna contends that the trial court erred when it determined that she failed to present sufficient evidence to support her claim for fraud against Valli and Jim. Specifically, Donna maintains that Valli and Jim intentionally misled her into believing that she would receive the deed to the property upon her payment for the cost of the improvements.

{¶25} A claim of fraud requires proof of the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076.

**{¶26}** Additionally, a plaintiff who prosecutes a fraud claim has the burden of proving that the defendant knowingly and intentionally misled or deceived the plaintiff. *Urbanek v. All State Home Mtge. Co.*, 178 Ohio App.3d 493, 2008-Ohio-4871, 898 N.E.2d 1015, ¶ 11. This burden cannot be established by conjecture, but rather must be proved by "direct evidence or justifiable inferences from established facts." Id., citing *Pumphrey v. Quillen* (1955), 102 Ohio App. 173, 177, 141 N.E.2d 675.

**{¶27}** In the instant case, Donna offers only mere conjecture that Valli and Jim committed a fraud against her regarding their arrangement concerning the property. There is no evidence to support Donna's claim that Valli and Jim made a false or misleading representation to her that she would get the deed in exchange for paying for the cost of the renovations. As previously mentioned, Donna admitted at trial that no one made *any* promises to her concerning the property. Moreover, the record is devoid of any evidence to support Donna's position that Valli and Jim intentionally misrepresented the nature of their agreement concerning the improvements to the property.

**{¶28}** Accordingly, we find that the trial court's decision to dismiss Donna's claim for fraud is supported by some competent, credible evidence going to all essential elements of the case and, therefore, is not against the manifest weight of the evidence.

**{¶29}** Based on the foregoing, Donna's assignment of error is overruled, and the judgment of the Wyandot County Court of Common Pleas is affirmed.

Judgment affirmed.

ROGERS, P.J., and WILLAMOWSKI, J., concur.