[Cite as *Akron Pregnancy Servs. v. Mayer Invest. Co.*, 2014-Ohio-4779.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

AKRON PREGNANCY SERVICES

    Appellant

    v.

MAYER INVESTMENT CO., et al.

    Appellees

C.A. No.     27141

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2012-01-0089

DECISION AND JOURNAL ENTRY

Dated: October 29, 2014

MOORE, Judge.

{¶1} Plaintiff-Appellant, Akron Pregnancy Services ("APS"), appeals from the judgment of the Summit County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellees, Mayer Investment Company, Jeffrey Mayer, and Rory Mayer (collectively, "Mayer Investment"). This Court reverses.

I.

{¶2} Prior to the events giving rise to this appeal, APS and Mayer Investment enjoyed a long-standing business relationship. Mayer Investment owned property on East Market Street in Akron, and APS leased space from Mayer Investment to operate its facility. On January 2, 2001, the parties entered into a lease agreement for a five-year term, commencing on January 1, 2001, and ending on December 31, 2005. The lease agreement also contained an option to renew, whereby APS could extend its lease for an additional five years. There is no dispute that APS exercised its option such that the parties had a binding lease until January 1, 2010.

{¶3}    In early January 2005, the parties signed a lease extension agreement.  The lease extension agreement purported to grant APS a new extension term, commencing on January 1, 2010, and ending on January 1, 2015.  Further, the lease extension agreement authorized two additional options to renew for five-year terms.  The first option would allow APS to extend its lease from January 1, 2015, to January 1, 2020.  The second option would allow APS to extend its lease from January 1, 2020, to January 1, 2025.  Although both parties and four witnesses signed the lease extension agreement, it was not notarized.

{¶4}    In 2010, both parties underwent financial difficulties.  APS asked Mayer Investment to consider a lease modification.  Specifically, it suggested decreasing the amount of office space it leased in exchange for a $1,000 reduction in its monthly rent.  Mayer Investment countered that it would approve the modification so long as the rent reduction was only $500 per month and APS agreed to terminate the lease "currently in existence" and instead abide by a month to month tenancy.  APS rejected Mayer Investment's offer and expressed a desire to maintain the current lease arrangement.  Nevertheless, on November 22, 2011, Mayer Investment notified APS that it would be terminating APS' tenancy and closing its building due to financial constraints.  Mayer Investment asked APS to vacate the building on or before January 31, 2012.

{¶5}    On January 6, 2012, APS filed suit against Mayer Investment for anticipatorily breaching their lease agreement.  Rather than pursue a claim for damages, APS sought specific performance of the lease agreement.  APS asked the court to issue both temporary and permanent injunctions, ordering Mayer Investment to abide by the terms of the lease and to not interfere with APS' access to the building and tenancy.  Shortly thereafter, Mayer Investment filed a motion to dismiss for failure to state a claim upon which relief could be granted.  It noted that the lease extension agreement the parties had signed in January 2005, was not notarized and was,

therefore, void by statute. Absent a term lease, Mayer Investment argued, APS had an implied month-to-month tenancy that Mayer Investment could, and did, terminate with timely notice. Mayer Investment also filed an answer and several counterclaims. On October 29, 2012, the trial court granted Mayer Investment's motion to dismiss.

{¶6} On February 12, 2013, APS filed a motion for reconsideration,[1] arguing that the court had improperly relied upon evidence outside of the complaint to dismiss the case. The trial court granted the motion to reconsider, vacated its prior journal entry, and also agreed to allow APS to file an amended complaint. In its amended complaint, APS reasserted its previous claim for relief, but also pleaded promissory and equitable estoppel on the basis of certain representations Mayer Investment had made about the parties' lease arrangement. Mayer Investment filed an answer as well as several counterclaims. In particular, Mayer Investment sought a declaration that the lease extension agreement the parties signed was void, APS had an implied month-to-month tenancy, and Mayer Investment had a right to evict APS as a result of having properly terminated the implied tenancy.

{¶7} Subsequently, Mayer Investment sought summary judgment on APS' complaint as well as on its own counterclaim for declaratory judgment. APS responded in opposition and also filed its own motion for summary judgment. Mayer Investment also responded in opposition, and APS filed a reply. The trial court granted Mayer Investment's motion for summary judgment on APS' complaint as well as on its counterclaim for declaratory relief. The court declared that the parties' lease extension agreement was void by statute, APS had a month-

---

[1] The motion noted that the court's October 29, 2012 entry was not a final judgment because it did not dispose of Mayer Investment's counterclaims.

to-month tenancy by operation of law, and Mayer Investment had terminated the implied tenancy with sufficient notice.

{¶8} APS now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING [MAYER INVESTMENT] SUMMARY JUDGMENT[.]

{¶9} In its sole assignment of error, APS argues that the trial court erred by awarding summary judgment to Mayer Investment. We agree.

{¶10} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293; Civ.R. 56(E).

{¶11}  APS argues that the trial court erred by granting Mayer Investment's summary judgment motion for two reasons.  First, it argues that defectively executed leases are enforceable as contracts in equity such that it was entitled to specific performance of the parties' lease extension agreement.  Second, it argues that Mayer Investment should have been ordered to abide by the lease extension agreement by virtue of the doctrine of equitable estoppel.

Specific performance on a defective lease

{¶12}  The statute of conveyances provides, in relevant part, that:

A * * * lease of any interest in real property * * * shall be signed by the * * * lessor * * *.  The signing shall be acknowledged by the * * * lessor * * * before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.

R.C. 5301.01(A).  The statute "sets forth clearly the legal requisites necessary to create a valid lease."  *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 284 (1965).  "[A] defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby."  *Id.*  Absent partial performance, "no recovery can be had in an action at law upon the defective [lease]."  *Wineburgh v. Toledo Corp.*, 125 Ohio St. 219, 221 (1932).  *See also Delfino* at 287 (partial performance can "remove [an] agreement from the operation of the statute of conveyances").  Yet, "[a] defectively executed [lease] * * *, when made by the owner, may be enforced against him as a contract to make a lease * * * for the reason that it is his contract."  *Lithograph Bldg. Co. v. Watt*, 96 Ohio St. 74, 84 (1917).  *Accord Citizens Nat. Bank in Zanesville v. Denison*, 165 Ohio St. 89, 95 (1956) ("A defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud.").

{¶13} There is no dispute that the lease extension agreement the parties signed was subject to the statute of conveyances and, because it was not notarized, it failed to satisfy the statute's requirements. *See* R.C. 5301.01(A). In moving for summary judgment, Mayer Investment argued that the defective agreement resulted in a periodic tenancy. Because APS paid its rent on a monthly basis, Mayer Investment argued that the parties had a month-to-month tenancy. *See Delfino* at paragraph one of the syllabus. It further argued that APS was not entitled to relief because Mayer Investment gave adequate notice of its intention to terminate the lease and APS failed to argue or demonstrate partial performance. *See id.* at paragraph four of the syllabus.

{¶14} In its brief in opposition to summary judgment, APS argued that the parties' agreement, while defective as a lease, was nonetheless enforceable as a contract between the parties in equity. APS noted that it had brought suit against Mayer Investment for anticipatory breach of contract and had requested specific performance rather than damages. It argued that, if the lease extension agreement was not enforced, it would be left without an adequate remedy at law. In support of its argument, it attached an affidavit from its Executive Director, Kaye Gauder. Ms. Gauder averred that APS had leased the subject property for over 23 years, that APS was unable to find office space at a comparable rent rate or in a location sufficient to suit its needs, and that the subject property was "uniquely suited" and "unique[ly] visibil[e]" to its target clients.

{¶15} The trial court accepted Mayer Investment's legal arguments and relied primarily upon *Delfino* to grant its motion for summary judgment. The court determined that the parties' defective lease had resulted in a month-to-month tenancy that Mayer Investment had properly terminated. It noted that, while a defective lease could be enforced in equity under the doctrine

of partial performance, APS had not argued partial performance. Thus, it concluded that APS was not entitled to relief.

{¶16} The law that applies in a defectively executed lease case depends upon the type of relief being pursued. In *Delfino*, the Supreme Court considered the effect of a defectively executed lease in an action at law to recover damages for breach of the lease. *Delfino*, 2 Ohio St.2d at 283. The Court held that:

> A defectively executed lease for a term of five years upon monthly rental creates a tenancy in the lessee from month to month and, where the tenant occupying under such lease vacates the premises at the end of a month after fully prepaying the rentals then due, he is not liable to the lessor *for the rental installments* accruing after such vacation, *in an action at law* based upon such defectively executed lease.

(Emphasis added.) *Id.* at paragraph one of the syllabus, citing *Wineburgh*, 125 Ohio St. at paragraph one of the syllabus. The *Delfino* Court noted that, as a matter of equity, the doctrine of part performance could remove a defective lease from the operation of the statute of conveyances in certain instances. *Delfino* at 286-287. It concluded that the plaintiff was not entitled to relief because the acts the plaintiff had alleged were not sufficient evidence of partial performance. *Id.* at 289. The Court's opinion, however, was driven by the remedy the plaintiff sought. That is, even though the Court applied the equitable doctrine of part performance, its purpose for doing so was to determine whether the plaintiff was entitled to money damages. Before affirming the decision to deny plaintiff relief, the Court specifically noted: "Since plaintiff did not request specific performance it is not necessary to decide in the action whether the defectively executed lease could be treated as a contract to make a lease which could be specifically enforced." *Id.*

{¶17} The plaintiff's election of remedy also explains the Supreme Court's decision in *Wineburgh*. In *Wineburgh*, the Court rejected the proposition that a defectively executed lease

could be regarded as a contract so as to allow a plaintiff to recover in an action at law. *Wineburgh* at 222-223. The plaintiff in *Wineburgh*, however, only sought damages in an action at law for breach of the lease. *Id.* at 221. *Accord Baltimore & O.R. Co. v. West*, 57 Ohio St. 161 (1897); *Richardson v. Bates*, 8 Ohio St. 257 (1858). *See also Cole v. EV Properties, L.P.*, 6th Cir. No. 13-3677, 2014 WL 1560502, *3-4 (Apr. 18, 2004) (result in case brought upon defective lease in Ohio dependent upon whether the aggrieved party has asked for a legal or an equitable remedy). The *Wineburgh* Court specifically noted: "Whether reformation or other equitable remedy is available * * * under this or similar circumstances, it is not necessary to decide in this action, for that question is not here presented." *Wineburgh* at 223.

{¶18} Had APS sought damages from Mayer Investment, *Delfino* would apply. That is, APS would be unable to recover under the parties' defectively executed lease extension agreement unless it demonstrated partial performance. *See Delfino*, 2 Ohio St.2d at 286-287. APS, however, never sought damages. It sought specific performance of the lease extension agreement under the theory that it was a contract to make a lease. *Compare Wineburgh* at 289. "A lease, defectively executed, will in equity be treated as a contract to make a lease * * *." *Lithograph Bldg. Co.*, 96 Ohio St. at syllabus. *Accord Citizens Nat. Bank in Zanesville*, 165 Ohio St. at 95. In certain instances, "a trial court may exercise its equitable jurisdiction and order specific performance" of a contract. *Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 237 (1990). *See also Carruthers v. Johnston Petroleum Corp.*, 5th Dist. Tuscarawas No. CA 1399, 1980 WL 354011, *5 (June 5, 1980) (specific performance ordered where "lease in question, although legally void for failure to comply with Section 5301.01, [was] enforceable in equity as a contract to make a lease"); *Moss v. Olson*, 148 Ohio St. 625 (1947) (specific performance of contract to renew lease ordered where no adequate remedy at law existed). "The

remedy of specific performance is not a matter of right, but of grace, resting in the sound discretion of the court." *Gans Tire Co. v. Intl. Polymer Equip. Corp.*, 9th Dist. Summit No. 14652, 1990 WL 235955, *2 (Dec. 26, 1990).

{¶19} Mayer Investment moved for summary judgment strictly on the basis that it had properly terminated the month-to-month tenancy that arose by operation of law when the parties failed to properly execute their lease extension agreement. The trial court granted summary judgment in favor of Mayer Investment on that basis. It did not consider the issue of specific performance because it mistakenly believed that, to prevail, APS had to demonstrate partial performance under *Delfino*. APS, however, could pursue the equitable remedy of specific performance under the theory that the lease extension agreement was a contract that Mayer Investment had breached. *See Citizens Nat. Bank in Zanesville* at 95; *Lithograph Bldg. Co.* at 84. Accordingly, the trial court erred by granting Mayer Investment's motion for summary judgment, as Mayer Investment was not entitled to judgment as a matter of law. As such, we remand the matter for the trial court to apply the correct law in the first instance. *See, e.g., Nevinski v. Dunkin's Diamonds*, 9th Dist. Summit No. 24405, 2010-Ohio-3004, ¶ 11. The court must determine whether the parties had a valid contract[2] and, if so, whether to grant APS specific performance on the contract.

Equitable estoppel

{¶20} "Rather than provide an affirmative action for relief, * * * equitable estoppel operates as a defense or shield to prevent the assertion of a right otherwise available." *Goodyear Tire & Rubber Co. v. Aetna Cas. And Surety Co.*, 9th Dist. Summit No. 16993, 1995 WL

---

[2] In its answer and counterclaims, Mayer Investment also challenged the validity of the lease extension agreement on the basis that Charles W. Mayer Jr., the man who signed the agreement on its behalf, was suffering from Alzheimer's and dementia at the time of its signing.

422733, *9 (July 12, 1995). APS raised equitable estoppel as a defense when Mayer Investment asserted that the parties' lease extension agreement was invalid. The only reason Mayer Investment advanced to support its position that the agreement was invalid, however, was that it was defectively executed. *See* R.C. 5301.01(A). Mayer Investment took the position that *Delfino* controlled and Ohio case law did not permit the lease extension agreement to be treated as a contract. The trial court agreed and ultimately concluded that "APS lack[ed] evidence to support its contention that equitable estoppel should remove the Lease Extension Agreement from operation of the Statute of Conveyances."

{¶21} As set forth above, *Delfino* is distinguishable from the case at hand. A defectively executed lease is nonetheless enforceable in equity as a contract between the parties who intended to be bound by it. *See Lithograph Bldg. Co.*, 96 Ohio St. at syllabus. *Accord Citizens Nat. Bank in Zanesville*, 165 Ohio St. at 95. When an aggrieved party seeks specific performance, the statute of conveyances is not an impediment to their recovery. *See, e.g., Carruthers*, 1980 WL 354011, at *6. *See also Seabrooke v. Garcia*, 7 Ohio App.3d 167, 169 (9th Dist.1982) ("The purpose of the acknowledgment statute (R.C. 5301.01) is to provide evidence of execution and authority for recordation. It is not to provide a way of escape for a party who later wishes to renege on his agreement."). Thus, Mayer Investment could not use the statute to defend itself against APS' complaint. Because an enforceable contract between the parties may exist, APS' equitable estoppel argument is premature. *See Goodyear Tire & Rubber Co.*, 1995 WL 422733, at *9 (equitable estoppel is a defense or shield, not a separate cause of action). This Court, therefore, will not address APS' equitable estoppel argument at this time. *See Kick v. Smithville W. Care Ctr.*, 9th Dist. Wayne No. 12CA0032, 2013-Ohio-2034, ¶ 7.

III.

{¶22}  APS' sole assignment of error is sustained.  The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.


CARLA MOORE
FOR THE COURT


HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

STEPHEN P. LEIBY, Attorney at Law, for Appellant.

HARRY A. TIPPING, CHRISTOPHER A. TIPPING, and KATHLEEN A. HAHNER, Attorneys at Law, for Appellees.