[Cite as *Baer v. Hendren*, 2017-Ohio-6933.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

LARRY BAER, ET. AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO. 5-17-05

    v.

JUSTIN HENDREN, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2015 CV 00372**

**Judgment Affirmed**

**Date of Decision:    July 24, 2017**

APPEARANCES:

    *Bradley S. Warren* for Appellants

    *Zachary Barger* for Appellees

**SHAW, J.**

{¶1} Plaintiffs-appellants, Larry and Colleen Baer, appeal the February 3, 2017 judgment of the Hancock County Court of Common Pleas finding that there was no enforceable residential lease for a term of five years between them and defendants-appellees, Justin and Victoria Hendren, and that an implied month-to-month tenancy existed between the parties. As a result of the judgment, the trial court found that the Hendrens gave proper notice of their intention to vacate the premises and that the Baers were not entitled to $12,000 in unpaid rent from the Hendrens. As for the Baers' other claims, the trial court awarded them $976.06 to replace a stovetop and glass shower door that were damaged during the Hendren's tenancy. The trial court also found that the Hendren's were entitled to damages arising from their counterclaim in the amount of $1,200 for the return of their security deposit and $365.75 for the value of leftover propane that the Baers used to heat the home after the Hendren's vacated.

{¶2} On appeal, the Baers claim that the trial court erred in determining that the five-year lease extension between the parties did not comply with the Statute of Conveyances codified in R.C. 5301.01(A) and therefore was not enforceable.

*Relevant Facts*

{¶3} On April 13, 2009, the parties entered into a three-year rental agreement for the Hendrens to take possession of a residence and several out buildings situated

on five acres in McComb, Hancock County, Ohio owned by the Baers. The rental agreement stated that the leasehold was to begin on April 1, 2009 and expire on April 1, 2012. The rental agreement specified that monthly rent of $1,200 was due on the first of each month.

{¶4} In the months of March 2011 to June of 2011, the parties discussed via email the possibility of a "long term" lease extension after the expiration of the original three-year lease in April of 2012. The topic of certain updates to the property was discussed by the parties in contemplation of the lease extension. Specifically, Justin Hendren stated in an email correspondence to Larry Baer dated June 28, 2011 that "there are some things that we would like to update, (i.e., the downstairs carpet) and would be willing to foot the bill if there is a long term lease in place." (Pl. Ex. D). In the same email, Justin identified three specific windows in the house that were "in need of attention" due to the wood frame being rotten and falling apart. (Id). Larry agreed to address the Hendrens' concern regarding the windows and asked Justin to gather quotes for the window replacement and indicated that he would further discuss a lease extension in person with him when the Baers returned to Ohio.[1]

{¶5} On August 12, 2011, the parties attempted to extend the term of the leasehold an additional five years from April 1, 2012 to April 1, 2017. Instead of

---

[1] The record indicates that the Baers lived in California during this time.

executing a separate rental agreement with the new terms, the parties modified a photocopy of the original three-year rental agreement by crossing out the original dates and inserting the new dates agreed upon for the five-year lease extension. With respect to the execution of the new rental agreement, Larry and Colleen Baer both wrote their initials and the date of execution next to their signatures executing the original three-year rental agreement. Justin Hendren also wrote his initials and the date of execution next to his and Victoria Hendren's signatures executing the original three-year rental agreement. Victoria Hendren did not sign or initial the purported five-year lease extension.[2] Notably, there was no language added to the lease extension referencing the parties' discussion of the window or the carpet replacement.

{¶6} The record reflects that sometime in the summer of 2014, the relationship between the Baers and the Hendrens deteriorated after Larry accused the Hendrens of causing damage to the home and other structures on the surrounding five-acre property. The Hendrens denied causing the damage and felt that the Baers were not respecting their right to possession of the premises by entering onto the property unannounced and without reasonable notice when the Hendrens were not

---

[2] At trial, Victoria Hendren attempted to argue that she should be dismissed from the lawsuit because she did not sign the five-year lease extension agreement. However, the trial court found that "Victoria Hendren conceded that she never objected to her name being signed to the new lease. Further, she lived on the property for two years and received the benefits of the leasehold. Therefore, Victoria Hendren is bound to the lease agreement to the same extent as all other parties." (Doc. No. 58 at 4). Victoria did not raise this issue on appeal.

home. Via email, the parties discussed the possibility of converting the existing lease extension agreement into a month-to-month tenancy, although the record indicates that a new, formal modification of the lease extension agreement was not entered into by the parties.

{¶7} On August 20, 2014, operating under the assumption that a month-to-month tenancy was in place, Justin Hendren sent an email to Larry Baer notifying him that the Hendrens intended to terminate the lease on September 30, 2014. In an emailed response, Larry objected to Justin's characterization of the lease term as being a month-to-month tenancy and insisted that the Hendrens remained obligated under the agreement for a five-year lease extension. Nevertheless, the Hendrens vacated the premises at the end of September 2014.

*Procedural History*

{¶8} On September 4, 2015, the Baers filed a complaint against the Hendrens asserting claims for breach of contract, conversion, and trespass to chattels. The Baers also asserted a claim under R.C. 3109.09, which allows parents to be held financially liable for certain acts committed by their children causing property damage. The Baers' complaint sought damages in excess of $20,000.[3]

---

[3] The Baers also named the Hendrens' minor children as parties to the complaint. The trial court dismissed the "unnamed Hendren children" from the action finding that "[t]hey lack the capacity to contract and their parents are legally responsible for any damage to the property under the lease." (Doc. No. 58 at 1).

{¶9} On October 13, 2015, the Hendrens filed an answer to the complaint, which included counterclaims for the Baers' failure to return their $1,200 security deposit and for conversion of $375.65 worth of propane, which the Hendrens left at the residence when they vacated.

{¶10} On January 8, 2016, the Hendrens filed a motion for summary judgment claiming that the five-year lease extension agreement was not enforceable because it did not comply with R.C. 5301.01(A), which requires the lease to be acknowledged or notarized. The Hendrens maintained that a periodic tenancy was in place between the parties due to the lack of acknowledgement and that they had complied with the notice requirement to cease a month-to-month tenancy.

{¶11} The Baers filed a response relying on a prior opinion of this Court, *Sigg v. Subway Sandwich Shops, Inc.*, claiming that the five-year lease extension agreement is valid under R.C. 2719.01, which permits reformation of instruments to conform to the intent of the parties under certain circumstances. *Sigg*, 3d Dist. No 4-97-12 (July 23, 1997). The Baers also argued that the doctrine of part performance removed the five-year lease agreement from consideration under R.C. 5301.01(A).

{¶12} The trial court overruled the Hendrens' motion for summary judgment finding that disputed issues of material fact existed.

{¶13} On September 23, 2016 and November 15, 2016, the trial court conducted a bench trial on the matter. The parties provided testimony in support of their claims and counterclaims, in addition to the numerous exhibits that were admitted for the trial court's consideration. The Hendrens also presented the testimony of Brandon McKee, the current resident of the premises at issue under a land contract for sale with the Baers.

{¶14} On January 23, 2017, the trial court issued a decision finding that the parties' attempt to extend the rental agreement was not enforceable under R.C. 5301.01(A) because the lease was not properly acknowledged. The trial court further found that R.C. 2719.01 did not operate to "cure" this defect in the lease and that the Baers failed to establish all the elements of part performance to find the lease valid on equitable grounds. Accordingly, the trial court determined that after the expiration of the original three-year lease in April 2012, the parties entered into a month-to-month tenancy, for which the Hendrens gave proper notice of their intention to terminate. Thus, the trial court found that the Baers were not entitled to $12,000 in unpaid rent for the Hendrens breaking the purported five-year lease extension agreement.[4]

{¶15} With respect to the parties' other claims for damages, the trial court found that the evidence at trial established that the Hendrens were responsible for

---

[4] The record indicates that the property was vacant for ten months before the Baers found a new tenant to take possession in August of 2015.

the damage to the shower door and the glass stovetop, and ordered them to pay the Baers $507.06 and $469.00 respectively, for a total of $976.06. The trial court further found in favor of the Hendrens on their counterclaim; specifically, that they were entitled to the return of their security deposit of $1,200 and to the value of the propane, $365.75, that was left in the tank when they vacated the premises. After offsetting the amounts awarded to each party, the trial court ordered the Baers to pay $589.69 in damages to the Hendrens, plus interest from the date of the judgment. The trial court's decision was journalized in its February 3, 2017 Judgment Entry.

{¶16} The Baers filed this appeal, asserting the following assignment of error.

> **THE TRIAL COURT'S JUDGMENT THAT THE FIVE YEAR LEASE ENTERED INTO BY THE BAERS AND HENDRENS IS UNENFORCEABLE BETWEEN THEM AS A MATTER OF LAW BECAUSE IT DOES NOT COMPLY WITH THE STRICTURES OF R.C. 5301.01(A) MUST BE REVERSED IN ACCORDANCE WITH THIS COURT'S DECISION IN *SIGG v. SUBWAY*.**

{¶17} On appeal, the Baers argue that the trial court erred in concluding that a month-to-month tenancy was created as a result of the parties' five-year lease extension agreement failing to comply with the acknowledgement requirement in R.C. 5301.01(A).

{¶18} At the outset we note that it is undisputed by the parties that the five-year lease extension failed to comply with the execution requirements contained in

-8-

R.C. 5301.01(A).[5] "It is well settled that where a purported lessee takes possession under a defectively-executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration." *Kilcoyne Properties, LLC v. Fischbach*, 5th Dist. Licking No. 03CA072, 2004-Ohio-7272, ¶ 40, citing *Baltimore & Ohio Railroad Co. v. West*, 57 Ohio St. 161 (1897). "The duration of the term is determinable by the provisions for payment of rent, so a lease providing for annual rent creates a tenancy from year to year, whereas a lease providing for monthly rent creates a tenancy from month to month." *Id.*, citing *Wineburgh v. Toledo Corporation*, 125 Ohio St. 219, 222 (1932).

{¶19} In the present case, the trial court relied upon *Delfino v. Paul Davies Chevrolet, Inc.*, in which the Supreme Court of Ohio addressed the validity of a lease that failed to comply with R.C. 5301.01 and held that "[a] defectively executed lease for a term of five years upon monthly rental creates a tenancy in the lessee from month to month and, where the tenant occupying under such lease vacates the premises at the end of a month after fully prepaying the rentals then due, he is not liable to the lessor for the rental installments accruing after such vacation, *in an action at law based upon such defectively executed lease*." *Delfino*, 2 Ohio St.2d 282, paragraph one of the syllabus (1965) (emphasis added).

---

[5] Section 5301.08 of the Revised Code exempts leases "not exceeding the term of three years" from meeting the acknowledgement requirement in R.C. 5301.01(A).

{¶20} Section 5301.01(A) of the Revised Code, also referred to as the "Statute of Conveyances" sets forth the legal requisites necessary to create a valid lease and states the following:

> **(A) A deed, mortgage, land contract as referred to in division (A)(21) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.**

{¶21} *Delfino* involved facts that are similar to the ones in the instant case. In *Delfino*, the parties agreed to extend their existing lease for a parcel of land utilized as a used car lot. The parties executed an instrument "purporting to be a lease for a term of five years commencing on January 1, 1960." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 283 (1965). The instrument in question did not conform to the mandates of R.C. 5301.01. Specifically, "[t]here was only one witness to the signature on the lease, and the acknowledgment of the grantor, although proper on its face, was shown to have been signed by the grantor, and the instrument was then taken by one of the parties to a notary public who placed the

acknowledgment thereon."[6] *Id.* In 1960, Paul Davies Chevrolet was sold. The lessor refused to assign the lease and the lessee, the car dealership, abandoned the lease. The lessor subsequently leased his land to another and brought an action against the car dealership to recover damages for an alleged breach of the lease.

**{¶22}** At issue in *Delfino*, as in the case *sub judice*, was whether the lease instrument, which did not comport with the requirements of R.C. 5301.01, could nevertheless be held to be a valid and enforceable lease for the term of five years. Like the Baers, the lessor in *Delfino*, who was seeking to enforce the defectively executed lease, asked the Court to permit the defect in the execution of the lease to be "cured" by R.C. 2719.01, which states:

> **When there is an omission, defect, or error in an instrument in writing or in a proceeding by reason of the inadvertence of an officer, or of a party, person, or body corporate, so that it is not in strict conformity with the laws of this state, the courts of this state may give full effect to such instrument or proceeding, according to the true, manifest intention of the parties thereto.**

**{¶23}** The Supreme Court refused to apply R.C. 2719.01 and observed that the lessor placed "too broad an interpretation on this section. To follow [the lessor's] argument would result in rendering completely nugatory the provisions of Section 5301.01, Revised Code, requiring that certain formalities must attend the

---

[6] We note that the former version of R.C. 5301.01, which was at issue in *Delfino*, required that deeds, mortgages, land contracts, leases and memoranda of leases of real property, memoranda of trust, certain powers of attorney, and other recordable instruments and transactions pertaining to real property be signed and attested to in the presence of two witnesses. This particular witness requirement was removed from the current version of R.C. 5301.01(A), which is implicated in the instant case.

execution of instruments transferring an interest in property." *Delfino*, 2 Ohio St.2d 282, 285. The Supreme Court then made a distinction between "technical defects of content" and the "mandatory requirements" of R.C. 5301.01 and determined that "[t]he curative effect of Section 2719.01, Revised Code, operates to validate instruments in relation to technical defects of content. It does not validate a lease which does not comply with the mandatory requirements of Section 5301.01, Revised Code, as to execution." *Id*. at 286. Thus, the Supreme Court concluded that because the lease in *Delfino* did not meet the mandatory requirements of R.C. 5301.01, R.C. 2719.01 could not be used to "cure" the execution defects to validate the lease.

{¶24} The Supreme Court in *Delfino* also addressed whether the doctrine of part performance could be applied to remove the lease from the operation of R.C. 5301.01. *Delfino*, 2 Ohio St.2d 282, 286. The Supreme Court noted that the doctrine of part performance is based in equity and is applicable in scenarios where it would be inequitable to allow the statute to invalidate the conveying instrument and "where the acts done sufficiently establish the alleged agreement to provide a safeguard against fraud in lieu of the statutory requirements." *Id*. at 286-87. The Supreme Court further stated the following regarding the elements that must be established for the doctrine of part performance to apply:

> **"Equity has no concern in cases of part performance except to prevent the perpetration of a fraud. That is the only ground which**

**can justify its interference. Otherwise, the exercise of its jurisdiction for the practical annulment of the statute would be merely bare usurpation. * * * The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscientious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense."**

*Delfino*, 2 Ohio St.2d 282, 289, quoting 49 AMERICAN JURISPRUDENCE 732, Section 427.

{¶25} Even though the Supreme Court in *Delfino* stated that, as a matter of equity, the doctrine of part performance could remove a defective lease from the operation of R.C. 5301.01 in certain instances, it nevertheless found that the record contained "insufficient acts" by the lessor—the party seeking to enforce the rental agreement—to remove the lease from the requirements of R.C. 5301.01 on the basis of part performance. The Supreme Court further noted that the "majority of cases hold that possession and payment of the rent are not sufficient to relieve the parties from the requirements of the statute. Ordinarily such acts will result in a periodic tenancy." *Delfino*, 2 Ohio St.2d 282, 289.

*The Trial Court's Decision*

{¶26} In applying the principles set forth in *Delfino* to the instant case, the trial court found that R.C. 2719.01 did not operate to remove the five-year lease

extension from the formalities of R.C. 5301.01(A). The trial court also found that the Baers had failed to establish the elements of part performance. *See Delfino*, 2 Ohio St.2d at 287, paragraph four of the syllabus. ("Part performance to be sufficient to remove an agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code) must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo*.").

{¶27} At trial, the Baers claimed that they expended money to make significant updates to the rental premises in reliance of the five-year lease extension with the Hendrens. Specifically, Larry Baer testified that instead of simply replacing the two or three rotten window frames, he and his wife, Colleen, decided to replace all the windows in the house to "make the house more efficient." (Doc. No. 67 at 22). Larry also claimed that he and Justin Hendren verbally agreed that there would be no increase in the rent under the five-year lease extension since the Hendrens were going to replace the downstairs carpet and rent the premises for an extended period of time. Notably, at trial, Justin Hendren disputed there was ever such an agreement between the parties. Larry also claimed at trial that he and Colleen replaced, rather than repaired, the air conditioning unit and the roof based upon their reliance that a valid five-year lease agreement was in place.

{¶28} With regard to the windows and the carpet, the trial court noted that the written document for the five-year lease extension did not reference any agreement between parties with respect to window replacement or a *quid pro quo* to not raise the rent in exchange for the Hendrens installing new carpet. The trial court observed that "[f]or partial performance to be effective under the test, the reliance must be 'exclusively referable' to the agreement. This is not the case here." (Doc. No. 58 at 10). The trial court also found that the evidence did not support the Baers' claim that they replaced all the windows in the home based solely upon the promise of a five-year lease. Rather, Larry testified that he and Colleen viewed the total window replacement as a good investment. The trial court further noted that a portion of the window repair, at least with respect to the rotten wood window frames, would have fallen within a landlord's duty to maintain habitable living conditions and to make reasonable repairs when necessary. The trial court also stated that the Baers failed to provide any evidence of the difference in cost between the total window replacement and replacement of the two or three windows that were in need of repair.

{¶29} As for the Baers' decision to replace the air conditioning unit and the roof, instead of only making the necessary repairs, the trial court found that the Baers failed to present any proof of the increase in cost to replace these items rather than to repair them. The evidence at trial also established that the Baers' roof

replacement was in part due to the roof being damaged in a derecho storm system and that insurance paid for some portion. Larry explained that the roof prior to the storm had two different color shingles, and that "to make it all match and look nice, I went ahead and spent the extra money and just did the whole house." (Doc. No. 67 at 33). Larry also stated that he decided to replace the old air conditioner with a more efficient unit. The record indicates that both the air conditioning unit and roof replacements took place after the parties attempted to extend the original lease in August of 2011, and as noted by the trial court there was no reference to these specific improvements in the five-year lease extension agreement.

{¶30} Larry acknowledged on cross-examination that his decision to replace the widows, the air conditioning unit, and the roof increased the value of the home, and the trial court observed in its decision that the Baers reaped the benefit of these improvements when they sold the property under a land contract for $230,000 in April of 2016, at a significantly appreciated value from their purchase price in 2008, and thus "were returned to *statu quo* in a financial sense." (Doc. No. 58 at 11).

{¶31} In addressing whether the Baers had established that the doctrine of part performance is applicable, the trial court found that:

> **[I]t is fair to conclude that [the Baers] relied to some degree on the agreement with [the Hendrens] to make improvements to the home. This is not to say, however, that these actions were unequivocally connected with, or directly attributable, to the lease. It is also the case that regardless of the [Baers'] intentions, they were ultimately made whole by the sale of the residence. For**

-16-

**all the foregoing reasons, [the Baers] have not established all of the elements of partial performance by a preponderance of the evidence.**

(Doc. No. 58 at 11).

*Standard of Review*

**{¶32}** When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review. *See Spinner v. Barger*, 3d Dist. Shelby No. 17-16-27, 2017-Ohio-1489, quoting *Lump v. Larson*, 3d Dist. Logan No. 8-14-14, 2015-Ohio-469, ¶ 9. " '[A] civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 13 (3d Dist.), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

**{¶33}** " ' [W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct.' " *Warnecke* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. " The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures." *Warnecke* at ¶ 13, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). " ' A reviewing court should not reverse a decision simply because it holds a different opinion concerning

the credibility of the witnesses and evidence submitted before the trial court.' "
*Warnecke* at ¶ 13, quoting *Seasons Coal Co.* at 81. " ' A finding of an error in law
is a legitimate ground for reversal, but a difference of opinion on credibility of
witnesses and evidence is not.' " *Warnecke* at ¶ 13, quoting *Seasons Coal Co.* at
81.

*Analysis*

{¶34} On appeal, the Baers argue that the trial court's decision is in conflict
with this Court's decision in *Sigg v. Subway Sandwich Shops*, 3d Dist. Defiance No.
4-97-12 (July 23, 1997). *Sigg* involved a commercial lease entered into in 1986
between the property owner, Olson, and Subway. The commercial lease provided
for an original term of five years and granted Subway three, five-year renewal
options. The lease also stated that all successors and assigns would be bound by the
agreement. In 1988, Olson sold the property to the Smalls and in 1990 Subway
exercised its first option to renew the lease. A year later, in 1991, the Smalls sold
the property to Sigg. Subway attempted to exercise its second five-year lease
renewal option in 1995, but Sigg refused to acknowledge the renewal option. Sigg
claimed that the lease was unenforceable because it was defectively executed and
asserted that only a month-to-month tenancy existed between the parties.[7]

---

[7] In *Sigg*, the lease agreement was not witnessed by two individuals, as required by the former version of
R.C. 5301.01, and was not notarized or otherwise acknowledged.

-18-

{¶35} Sigg notified Subway that he was terminating the lease and demanded that Subway vacate the premises by January 31, 1996. Sigg filed a forcible entry and detainer action against Subway. The trial court found that the lease did not comply with the requirements of R.C. 5301.01, and held that the lease and the option for renewal were invalid. Subway appealed to this Court claiming that even though the lease was improperly executed under R.C. 5301.01, it was nevertheless a valid and enforceable contract subject to *specific performance*. Subway also argued that it had undertaken substantial acts in reliance of the lease agreement with Sigg to constitute sufficient part performance to remove the lease from the operation of R.C. 5301.01. Specifically, the record established that since entering into the lease, Subway "expended considerable time and money to remodel the premises so that it would look like the standard subway shop." *Sigg* at *3.

{¶36} The Court in *Sigg* reversed the trial court's ruling and found the lease valid on the ground of part performance. We reasoned in our prior opinion that:

> **This remodeling and the addition of a sign and parking lot were provided for in the lease. Additionally, Subway paid an increasing amount of rent each year as provided in the lease. Subway followed the lease agreement exactly and gave the proper notice for renewal. Subway's acts changed its position to its detriment if the lease is not followed because Subway has gone to the expense of starting its sandwich shop and maintaining it with the understanding that it could remain at that location for a maximum of twenty years under the lease. Finally, Subway's acts and Sigg's acceptance of the benefit of the contract make it impossible to return the parties to the positions they would have held if the lease had never occurred.**

*Sigg* at \*3.

**{¶37}** Initially, we find that the facts in *Sigg* are readily distinguishable from the present case insofar as the Baers attempt to equate the two cases on the basis of part performance; specifically, we find no error in the trial court's rationale that the Baers failed to prove that they undertook acts sufficient to establish all of the elements of part performance. Thus, we conclude that the trial court did not error in determining that the five-year lease extension agreement cannot be held valid and enforceable on the basis of part performance by the Baers.

**{¶38}** Nevertheless, the Baers direct our attention to a separate portion of the *Sigg* opinion wherein we addressed the validity of the lease in light of its failure to comply with the execution requirements in R.C. 5301.01. In particular, the Baers argue that the trial court's decision in the instant case was wrongly decided based upon the following language in the *Sigg* opinion, in which we stated, "[s]ince the parties intended to execute the lease as it was written, a mere defect in the *number of witnesses* cannot be used by a successor to the party to escape the terms of the lease." *Sigg* at \*2 (emphasis added).

**{¶39}** This language in *Sigg* only addressed the effect of the failure to adhere to the witness requirement on the validity of a lease and is silent regarding the effect of a lack of acknowledgment on the instrument. It is noteworthy that the witness requirement is no longer present in the current version of R.C. 5301.01(A), which

is at issue in this case. Furthermore, when the General Assembly removed the witness requirement from R.C. 5301.01, it declared its intent that the amendment to the former R.C. 5301.01 is retrospective in its operation. *See Burger v. Buck*, 11th Dist. Portage No. 2008-P-0041, 2008-Ohio-6061, fn. 2, citing 2001 H.B. 279, section 3. [8] Thus, the language in *Sigg* relied upon by the Baers is consistent with not only the current execution requirements of R.C. 5301.01(A), but is also consistent with the clear legislative intent not to invalidate recordable instruments and transactions pertaining to real property that fail to comply with the witness requirement in former R.C. 5301.01.

{¶40} The Baers also cite to several cases which they claim support their contention that the lease is a valid contract between the parties, despite not meeting the acknowledgement requirement in the statute. *See*, *e.g.*, *Citizens Natl. Bank v. Denison*, 165 Ohio St. 89 (1956), superseded by statute as stated in *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, ¶ 11, (involving a defectively executed mortgage); *Logan Gas Co. v. Keith*, 117 Ohio St. 206 (1927) (involving lease for oil and gas and an acknowledgment by telephone); *Seabrooke v. Garcia*, 7 Ohio App.3d 167 (1982) (involving a defectively executed mortgage acknowledged by a

---

[8]Section 3 of 2001 H.B. 279 specifically states: "The General Assembly declares its intent that the amendment made by this act to section 5301.01 of the Revised Code is retrospective in its operation and is remedial in its application to instruments described in that section that were executed or recorded prior to the effective date of this act, except that the amendment does not affect any substantive rights or vested rights that came into existence prior to the effective date of this act."

notary who was not authorized to notarize in the county where the document was signed).

**{¶41}** However, none of the cases cited by the Baers pertains to the specific type of conveyance involving the lease of the surface of real property. *See Baxter v. Res. Energy Expl. Co.*, 11th Dist. Trumbull Nos. 2014-T-0113, 2014-T-0114, 2014-T-0115, 2014-T-0117, 2014-T-0118, 2014-T-0119, 2015-Ohio-5525, ¶ 31 (stating that "an oil and gas lease is not a 'lease' in the traditional sense of a lease of the surface of real property" and explaining the rationale for the disparate application of R.C. 5301.01 to oil and gas leases).

**{¶42}** Rather, it has been recently held that the principles set forth by the Supreme Court in *Delfino* still apply to an *action at law* for damages, as opposed to an action *in equity* for specific performance, based upon the alleged breach of a defectively executed lease of real property, such as in the case *sub judice*. *See Akron Pregnancy Services v. Mayer Investment Co.*, 9th Dist. Summit No. 27141, 2014-Ohio-4779, ¶ 17, citing *Wineburgh v. Toledo Corp.*, 125 Ohio St. 219, 221, 181 N.E. 20 (1932), (observing a distinction in applicable case law involving R.C. 5301.01(A) depending upon the plaintiff's election of remedy); *see also*, *Cole v. EV Properties, L.P.*, 6th Cir. No. 13-3677, *3-4 (Apr. 18, 2004) (finding the result in a case brought upon a defective lease in Ohio is dependent upon whether the aggrieved party has asked for a legal or an equitable remedy). As previously noted,

in *Sigg*, the issue of specific performance was raised by Subway in seeking enforcement of the lease; thus presenting yet another distinction from the facts in the instant case.

{¶43} In sum, we find no error in the trial court's application of *Delfino* to the present case; specifically, we find no error in the trial court's finding that the five-year lease extension was invalid for failing to comply with the acknowledgement requirement in R.C. 5301.01(A). We further find no error in the trial court's conclusion that the Baers failed to prove by a preponderance of the evidence that the doctrine of part performance applied to remove the lease from the operation of R.C. 5301.01(A). Accordingly, the assignment of error is overruled.

{¶44} Based upon the forgoing, the assignment of error is overruled and the judgment of the trial court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**