[Cite as *Stanfield v. Attica*, 2022-Ohio-747.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA  COUNTY

RAFAELA STANFIELD, ET AL.,

    PLAINTIFFS-APPELLANTS,             CASE NO. 13-21-09

    v.

VILLAGE OF ATTICA, SENECA COUNTY,

                                   **O P I N I O N**

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Trial Court No. 20 CV 0203

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   March 14, 2022**

APPEARANCES:

    *Rafaela Stanfield and Kirk Stanfield*, Appellants

    *Dean Henry* for Appellee

Case No. 13-21-09

**ZIMMERMAN, P.J.**

{¶1} Plaintiffs-appellants, Kirk and Rafaela Stanfield (the "Stanfields"), pro se, appeal the June 4 and July 6, 2021 entries of the Seneca County Court of Common Pleas granting judgment in favor of defendant-appellee, the Village of Attica, Seneca County ("Attica"). For the reasons that follow, we affirm in part and reverse in part.

{¶2} This case stems from an ongoing dispute between the Stanfields and Attica regarding Attica's water and sewer assessments.[1] Because the Stanfields disagree with the way in which Attica assesses water and sewer services, they filed a complaint on August 20, 2020 alleging claims for wrongful and discriminatory billing, excessive late fees and penalties, improper auditor certifications, and for violations of their "civil rights." (Doc. No. 4). Attica filed its answer on September 18, 2020. (Doc. No. 7).

{¶3} The case proceeded to a bench trial on April 27, 2021, after which the trial court permitted the parties to submit written closing statements. (Doc. Nos. 19, 20). On June 4, 2021, the trial court issued a general judgment in favor of Attica. (Doc. No. 21). The Stanfields filed a request for findings of fact and conclusions of law on June 15, 2021. (Doc. No. 25). The parties filed proposed findings of fact

---

[1] Much of the factual and procedural background related to this case is recited in a previous case, and we will not duplicate those efforts here. *See Alt v. Pazmino-Stanfield*, 3d Dist. Seneca No. 13-17-34, 2018-Ohio-2346.

Case No. 13-21-09

and conclusions of law and the trial court issued its findings of fact and conclusions

of law on July 6, 2021. (Doc. Nos. 27, 28, 29). The trial court made the following

findings of fact and conclusions of law (as relevant to this appeal):

FINDINGS OF FACT

4. Attica Village Ordinance 95-04, adopted on July 27, 1995, established penalties for non-payment of water and sewer utilities. Ordinance 95-04 set a ten percent (10%) penalty that is "assessed on delinquent portions of water billing."

5. Attica generally bills for sewer services based on the amount of water a household uses. Attica bills water and sewer services on the same bill. Except for flat-fee sewer services, Attica bills for sewer services based on water usage.

6. There is no practical way to measure sewage flow from residence [sic] household for purpose of determining sewer charges. Without a water measurement, residential sewage flow cannot be determined accurately.

7. At Plaintiff Kirk Stansfield's [sic] request, Attica terminated water service to the Stanfield home in November of 2009. The termination of water service prevented Attica from measuring the sewer usage for the Stanfield residence.

8. After the termination of water service to the Stanfield residence, [the] Stanfields continued to use Attica's sewer system without making any sewer payments.

9. On January 28, 2010, Attica established a flat-fee water and sewer rate structure via Ordinance number 2009-50. This ordinance included a flat-fee rate structure for sewer service for households that do not use Attica water.

* * *

CONCLUSIONS OF LAW

-3-

\* \* \*

4. Penalties for non-payment of utility bills are authorized by ordinance and statute. Ohio law permits rents or charges, together with any penalties, to be levied and certified to the County Auditor. Both [R.C. 743.04(A)(1)(a) and 735.29] authorize the assessment of unpaid rents, charges and penalties.

5. There is no difference between water and sewer services for purposes of applying the ten percent (10%) penalty. Alt v. Pazmino-Stanfield, 3d Dist. Seneca No. 13-17-34, 2018-Ohio-2346.

\* \* \*

7. [R.C. 1343.01] addresses the maximum rate of interest that may be charged a party to a "bond, bill, promissory note, or other instrument of writing for the forbearance or payment of money at any future time." The penalty for non-payment is just that, a penalty. It is not an interest charge. The Ohio usury statute has no application to the penalties assessed for delinquent water and sewer charges.

8. The issue of alleged improper auditor certifications has previously been litigated by the Stanfields in [Alt] \* \* \* .

\* \* \*

12. The Stanfields were on notice that they were subject to an assessment on their property for sewer services:

"Because R.C. 735.29 specifically provides authority for the board of trustee [sic] of public affairs to 'manage, conduct, and control the waterworks [\* \* \*] or other similar public utilities, we find this language, coupled with the tax certification and ordinance language utilized by the Village was sufficient to put [the Stanfields] on notice that they were subject to an assessment on their property taxes for water services, sewer services, or both."

[*Alt* at ¶ 16, quoting R.C. 735.29 and citing *Britt v. Columbus*, 38 Ohio St.2d 1, 8 (1974)].

13. [The] Stanfields' allegations of civil rights violations * * * were never developed at trial. * * * [The] Stanfields' claim of disparate treatment was negated by testimony that they were not being treated differently than others similarly situated.

14. [The] Stanfields' challenge to the certifications to the County Auditor and allegations that the County Auditor "adds more penalties" were not proven at trial. [The] Stanfields failed to join Seneca County Auditor as a party to this action.

(Underline sic.) (Doc. No. 29).

{¶4} On July 29, 2021, the Stanfields field their notice of appeal. (Doc. No. 30). They raise seven assignments of error, which we will discuss together.

**Assignment of Error No. I**

**The Trial Court committed reversible error by failing to acknowledge that there is no statutory authority for "Debt Retirement Flat Rates" charged by Attica to water and sewer customers.**

**Assignment of Error No. II**

**The Trial Court committed reversible error by failing to recognize the punitive and discriminatory nature of the "Debt Retirement Flat Rate" charged to Plaintiff-Appellants.**

**Assignment of Error No. III**

**The Trial Court committed reversible error by not acknowledging that Attica has the responsibility to meter water (and sewer) usage and that their failure to do so is not statutory authority for the "Debt Retirement Flat Rate" charge for "sewer nonmetered".**

## Assignment of Error No. IV

**The Trial Court committed reversible error by condoning Attica's billing practice of compounding penalties and late fees at 10 percent per month.**

## Assignment of Error No. V

**The Trial court committed reversible error by not examining the "certifications" Attica submitted to the Seneca County Auditor and confirming or denying that these "certifications" conform to Ohio State law.**

## Assignment of Error No. VI

**The Trial Court committed reversible error by not acknowledging the undeniable and proven (with Defendant's own documents) illegal and non-statutory acts and actions that have harmed Plaintiffs for over ten years.**

## Assignment of Error No. VII

**The Trial Court committed reversible error by its overreliance on Alt v. Pazmino-Stanfield (2018) in its Findings of Fact and Conclusions of Law.**

{¶5} In their first, second, third, fifth, sixth, and seventh assignments of error, the Stanfields argue that we should reverse the trial court's decision because Attica is without statutory authority to assess a flat rate for households that utilize only sewer services. In other words, in their first, third, and sixth assignments of error, the Stanfields argue that Ordinance 2009-50 (permitting Attica to assess a flat rate) is invalid. Similarly, in their second assignment of error, the Stanfields contend that

the amount of the flat rate "is punitive and discriminatory" as applied to them. (Appellant's Brief at 12).

{¶6} Under their fifth and seventh assignments error, the Stanfields specifically argue (based on their argument that Ordinance 2009-50 is invalid) that Attica's certifications to the Seneca County Auditor of their unpaid sewer assessments are erroneous.

{¶7} Finally, in their fourth assignment of error, the Stanfields argue that the trial court erred by concluding that Attica has authority to compound the cumulative unpaid water and sewer assessment.

*Standard of Review*

{¶8} "'When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review.'" *Lump v. Larson*, 3d Dist. Logan No. 8-14-14, 2015-Ohio-469, ¶ 9, quoting *San Allen, Inc. v. Buehrer*, 8th Dist., 2014-Ohio-2071, ¶ 89. "'[A] civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."'" *Id.*, quoting *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 13 (3d Dist.), quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶9} "'"[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier

of fact are correct.""" *Id.* at ¶ 10, quoting *Warnecke* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. "'The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures.'" *Id.*, quoting *Warnecke* at ¶ 13, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). ""A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal* at 81. ""A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."" *Id.*, quoting *Warnecke* at ¶ 13, quoting *Seasons Coal* at 81.

*Analysis*

{¶10} As an initial matter, the Stanfields failed to provide a transcript of the proceedings in this case or a suitable alternative. *Accord Spinner v. Barger*, 3d Dist. Shelby No. 17-16-27, 2017-Ohio-1489, ¶ 9. "Under App.R. 9, an appellant must submit to the appellate court a transcript of the trial court proceedings they deem necessary for the appellate court's review." *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 83. "However, if no transcript is available, App.R. 9(C) and (D) provide alternatives for the appellant." *Id.* Instead of proceeding under App.R. 9, the Stanfields directed this court to the parties' written closing statements.

*Compare Moder v. Letscher LLC*, 11th Dist. Trumbull No. 2004-T-0013, 2005-Ohio-700, ¶ 9 ("Appellants, however, have failed to supply this court with either a full transcript of the trial or a statement that conforms with App.R. 9(C) or (D). Rather, they simply included appellee's portion of the closing arguments.").

{¶11} "[W]here there is no transcript submitted on appeal, '[t]here is a presumption that the trial court proceedings were validly conducted. Absent a complete transcript or an acceptable alternative (such as is described in App.R. 9(C)), we must presume that the trial court's decision is correct.'" *Barksdale v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 16AP-297, 2017-Ohio-395, ¶ 17, quoting *Jenkins v. State Farm Mut. Auto. Ins. Co.*, 10th Dist. No. 11AP-1074, 2013-Ohio-1142, ¶ 30. *See also Spinner* at ¶ 9 ("'"When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."'"), quoting *Hayward v. Bellmann*, 6th Dist. Williams No. WM-09-007, 2010-Ohio-3438, ¶ 40, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "Furthermore, where an appellant fails to provide the court with a transcript of the trial court proceedings, despite the fact that he contends that certain of the trial court's finding of fact were improper, a court has nothing to review without a transcript and must presume that the findings of fact are correct and

supported by the evidence." *Barksdale* at ¶ 17. Consequently, proceeding under the presumption that the trial court's findings of fact are correct and supported by the evidence, we will review the portions of the Stanfields' arguments that are not dependent on a trial transcript for their resolution. *See Knapp* at 200.

{¶12} In their first, third, and sixth assignments of error, the Stanfields argue that Attica was without statutory authority to impose "'flat rates' or 'Debt Retirement Flat Rates' that are unrelated to volume usage." (Appellant's Brief at 11). The Stanfields are mistaken.

{¶13} Indeed, the parties do not dispute that the "Ohio Constitution empowers Ohio municipalities to own and operate public utilities, including water and sewer systems, for the purpose of providing utility services to themselves and their residents." *Nolan v. Cleveland*, 8th Dist. Cuyahoga No. 105552, 2017-Ohio-8887, ¶ 16, citing *Xenia v. Ohio*, 140 Ohio App.3d 65, 69 (10th Dist.2000) and R.C. Chapter 743. In particular, R.C. 735.29, which describes the general powers and duties of a village for the collection of water rents and charges, provides that "[t]he board of trustees * * * shall manage, conduct, and control the waterworks * * * or other similar public utilities, furnish supplies of water, [and] collect all water * * * rents or charges * * * ." Namely, that statute authorizes a village, to assess a water or utility rent or charge "of sufficient amount, and in such manner as it determines to be most equitable" on the residences supplied with such service "[f]or the purpose

of paying the expenses of conducting and managing such waterworks, plants, and public utilities or of making necessary" additions, extensions, or repairs. *Id.*

{¶14} R.C. 743.04, which describes the assessment and collection of water rents or charges, provides in its relevant part:

> (A)    For the purpose of paying the expenses of conducting and managing the waterworks of a municipal corporation, including operating expenses and the costs of permanent improvements, the director of public service or any other city official or body authorized by charter may assess and collect a water rent or charge of sufficient amount and in such manner as the director, other official, or body determines to be most equitable from all tenements and premises supplied with water.

R.C. 743.04(A).

{¶15} More importantly, R.C. 729.49, which describes a municipal corporation's authority to establish and collect sewer rents, provides, in its relevant part:

> The legislative authority of a municipal corporation which has installed * * * sewerage * * * may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person * * * whose premises are served by a connection thereto. Such charges shall constitute a lien upon the property served by such connection and if not paid when due shall be collected in the same manner as other municipal corporation taxes. The legislative authority may change such rates or charges from time to time as is deemed advisable.

*See also* R.C. 729.50 (authorizing a "the director of public service [to] manage, conduct, and control the sewerage system").

**{¶16}** In its judgment entry setting forth its findings of fact and conclusions of law, the trial court concluded that "Ohio law permits [Attica], a municipal corporation, to assess and collect water and sewer rents or charges * * * ." (Doc. No. 29).

**{¶17}** "Interpretation of a statute or ordinance is a matter of law, and thus, the proper standard of review is de novo." *State ex rel. Osborne v. N. Canton*, 5th Dist. Stark No. 2018CA00132, 2019-Ohio-1744, ¶ 20, citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9. "The paramount concern is determining legislative intent in enacting the statute." *Id.*, citing *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21. "To discern this intent by looking at the language used in the statute [or ordinance] itself, we must read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Id.*, citing *State ex rel. Choices for S.W. City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, ¶ 40. *See also Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, ¶ 14 ("Generally, we read undefined terms as having their plain and ordinary meaning."); R.C. 1.42. "'[I]f such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged.'" *Osborne* at ¶ 20, citing *State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147, 149 (1985). "In other words, if the meaning is unambiguous and definite, then the statute [or ordinance] is to be applied as written and needs no

further interpretation." *Id.*, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995).

{¶18} However, "[w]hen the language of [a statute or] ordinance is ambiguous, a court may then consider rules of construction to determine legislative intent." *Marietta v. Bd. of Trustees for Washington Cty. Woman's Home*, 4th Dist. Washington No. 19CA23, 2020-Ohio-5144, ¶ 42, citing *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, ¶ 10 and *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). A statute or ordinance is ambiguous if it contains language which is susceptible subject to various interpretations. *State ex rel. Osting v. Sidney*, 3d Dist. Shelby No. 17-2000-21, 2001 WL 272521, *4 (Mar. 20, 2001); *State ex rel. Harson Invests., Ltd. v. Troy*, Ohio, 2d Dist. Miami No. 2017-CA-22, 2018-Ohio-2748, ¶ 54. "R.C. 1.49 lists several factors that a court may consider when determining the legislative intent of an ambiguous statute." *Omran v. Lucas*, 7th Dist. Mahoning No. 21 MA 0031, 2021-Ohio-4592, ¶ 55. *See also Harson Invests., Ltd.* at ¶ 54 ("The standard rules of construction are also applied to ordinances."), citing *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, ¶ 12 and *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, ¶ 14.

{¶19} R.C. 735.29 and 743.04(A) unambiguously and definitely authorize Attica to manage, conduct, and control its waterworks (or other similar public

utilities), which this court previously concluded includes sewer services. *See Alt*, 2018-Ohio-2346, at ¶ 17. Furthermore, R.C. 735.29, and 743.04(A) unambiguously and definitely authorize Attica to assess a water (or utility) charge of a sufficient amount and in manner it determines to be equitable for the purpose of managing the village's waterworks. Likewise, R.C. 729.50 unambiguously and definitely authorizes Attica to manage, conduct, and control its sewerage system, and R.C. 729.49 unambiguously and definitely authorizes Attica to assess a just and equitable sewer rate.

{¶20} Consequently, Attica adopted ordinance 2009-50 on January 28, 2010 in which it established the village's water and sewer and rate schedule. (Defendant's Ex. A). The ordinance sets forth the water and sewer rates, including a "flat rate of $64.14 per month for 'Sewer Nonmetered,'" applicable to residences within the village "that do not use Attica water." (Appellee's Brief at 8). (*See also* Plaintiff's Ex. 3).

{¶21} Nevertheless, the Stanfields contend that ordinance 2009-50 is invalid because the Revised Code makes "no provision for 'flat rates or 'Debt Retirement Flat Rates' that are unrelated to volume usage." (Appellant's Brief at 11). However, based on our conclusion that R.C. 729.49, 729.50, 735.29, and 743.04(A) unambiguously and definitely authorize Attica to assess a sufficient rate (flat or metered) to manage, conduct, and control its water and sewer system, we conclude

that the Stanfields' argument is without merit. *See Huber v. Denger*, 38 Ohio St.3d 162, 164-165 (1988) (holding that "R.C. Chapter 6117 authorizes a board of county commissioners to allocate the cost of a facility serving a portion of a sewer district among all residents of the district" because the statute provides only that the rates should be sufficient to pay the cost of operation and maintenance of improvements and '[t]here is no prohibition regarding the use of additional assessments to retire capital debt"). *See also Gatton v. Mansfield*, 67 Ohio App. 210, 212 (5th Dist.1940) (concluding "that the sewer rental is based upon the amount of water used, the operation of the sewerage system is dependent upon the water supply, and the water and sewer service may be rightfully considered as one transaction"); 1959 Ohio Atty.Gen.Ops. No. 1959-0706 at 420-421.

{¶22} Furthermore, to the extent that the Stanfields contend that the amount of the flat rate "is punitive and discriminatory" as applied to them, we are not persuaded by their argument. (Appellant's Brief at 12). Again, Attica is statutorily authorized to assess a rate that it determines to be sufficient to manage, conduct, and control its water and sewer system. Therefore, Attica was permitted to establish a new rate schedule if it determined that a higher rate was necessary to sufficiently manage, conduct, and control its water and sewer system.

{¶23} Indeed, accepting the trial court's finding that the "Stanfields' claim of disparate treatment was negated by testimony that they were not being treated

differently than others similarly situated" is correct and supported by the evidence (as we are required to do), we cannot say that the flat rate is punitive or discriminatory as the Stanfields allege. *See* 1949 Ohio Atty.Gen.Ops. 1949-1280. *See also Cahill v. Lewisburg*, 79 Ohio App.3d 109, 115 (12th Dist.1992). To illustrate, in response to the Stanfields' interrogatories, Attica explained that the flat rate charge of $64.14 established in ordinance 2009-50 "was originally determined based on the average water usage of a home/household in [Attica] at the time the rate was adopted by [Attica]." (Plaintiff's Ex. 18). Furthermore, Attica answered that "*[e]very* water customer is also charged a Capital Debt Retirement Flat Rate of $17.25 each month. This goes to a fund for capital improvements and projects to the sewer utility system." (Emphasis added.) (*Id.*). *See Kubicki v. N. Royalton,* 139 Ohio app.3d 127, 132 (8th Dist.2000) ("Money from assessments can be used to retire sewer system indebtedness."), citing R.C. 729.52.

{¶24} Finally, the Stanfields argue (based on their argument that Ordinance 2009-50 is invalid) that that Attica's certifications to the Seneca County Auditor of their unpaid sewer assessments are erroneous. However, based on our conclusion that ordinance 2009-50 is *not* invalid, the Stanfields' argument is without merit.

{¶25} Similarly, the Stanfields contend under their fourth assignment of error that Attica was without authority to "compound[] penalties and late fees at 10 percent per month * * * ." (Appellant's Brief at 13). For the same reason that Attica

is statutorily authorized to assess a sufficient rate to manage, conduct, and control its water and sewer system, Attica is statutorily authorized to asses a penalty for rents or charges that are not paid when due. *See* R.C. 735.29; 743.04(A)(1)(a). *See also Twin Lakes Resorts, Inc. v. Thousand Adventures of Ohio, Inc.*, 3d Dist. Auglaize No. 2-97-16, 1997 WL 791523, *2-3 (Dec. 18, 1997); R.C. 729.40.

{¶26} Here, Attica adopted ordinance 95-04 on July 27, 1995 in which it established the village's water bill payment schedule. (Plaintiff's Ex. 9). The ordinance sets forth the penalty for rents or charges that are not paid when due and provides a "[t]en percent (10%) penalty assessed on delinquent portion of water billing" which is assessed on the "23'rd" of the month. (*Id.*). The Stanfields protest Attica's application of ordinance 95-04 by "compounding the cumulative unpaid balances at 10 percent per month, resulting in massive accelerating penalties." (Appellant's Brief at 8). Attica disagrees and argues that "[p]enalities for non-payment of utility bills are authorized by ordinance and statute" and that "[n]o evidence was presented that the rents, charges or penalties were unreasonable or inequitable." (Appellee's Brief at 11).

{¶27} We agree with the Stanfields that the text of ordinance 95-04 does not support compounding the cumulative unpaid water and sewer assessment each month (including the previous months' penalties) with the ten-percent penalty. Rather, the clear and unambiguous language of the ordinance states that the ten-

percent penalty will be assessed on the delinquent portion of the water billing—that is, the language of the ordinance makes no mention of compounding penalties. Stated differently, the ordinance does not authorize the ten-percent penalty to be assessed on any penalty-portion of a water bill.

{¶28} Moreover, to the extent that the Stanfields contend that the certifications submitted by Attica to the Seneca County Auditor are "invalid," that argument is barred by the doctrine of res judicata. Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus. In a previous case involving the Stanfields, this court addressed the Stanfields' "question whether [Attica] and the Seneca County Auditor properly certified the sewer assessment delinquencies to the Seneca County Treasurer and whether [Attica] used the proper procedures regarding the certifications that created [a] lien" on their real property. *Alt*, 2018-Ohio-2346, ¶ 12. We determined "that the certifications in question were proper * * * ." *Id.* at ¶ 18. Consequently, the Stanfields' argument here arises from the same "nucleus of facts that was the subject matter" of the prior case. *Grava* at 353. Therefore, their argument is barred by the doctrine of res judicata.

{¶29} Based on the foregoing reasons, the Stanfields' fourth assignment of error is sustained, and their first, second, third, fifth, sixth, and seventh assignments of error are overruled.

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in assignments of error one, two, three, five, six, and seven we affirm the judgment of the trial court.  Having found error prejudicial to the appellant herein in the particulars assigned and argued in assignment of error four, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**